WILLIAM W. HOLCOMB

*v.*

THE PEOPLE *ex rel.* Harriet L. Tuttle.

| | |
|---|---|
| 79 | 409 |
| 133 | 175 |
| 34a | 22 |
| 34a | 402 |
| 34a | 448 |
| 79 | 409 |
| 140 | 354 |
| 79 | 409 |
| 52a | 487 |
| 79 | 409 |
| 46a | 522 |
| 79 | 409 |
| 163 | 292 |
| 79 | 409 |
| 176 | 587 |
| 79 | 409 |
| 80a | 668 |
| 79 | 409 |
| 192 | 582 |
| 79 | 409 |
| 115a | 21 |

1. APPEAL—*from county to circuit court, in bastardy case.* Under the R. S. of 1874, an appeal lies from the county to the circuit court, in a bastardy case, and a trial may be had *de novo*, where the trial is had in the county court since the revision took effect.

2. PRACTICE—*the rules of practice may be changed before a trial is had.* The parties to a suit have no vested right to the rules of practice or modes of procedure prescribed by the laws in force when a suit is brought, but they may be amended, altered or repealed, and others substituted in their stead, at any time before a final trial is had.

3. NEW TRIAL—*finding as to facts.* In a bastardy proceeding, where the defendant sets up an *alibi*, and upon this point of defense the testimony is irreconcilably conflicting, a new trial will not be granted, especially where two juries have found the same verdict.

4. ERROR *will not always reverse—admission of evidence.* While it is no error to reject evidence, in a bastardy trial, of sexual intercourse long before the time when the prosecutrix became pregnant, as being too remote, yet its admission against the defendant will not be a ground of reversal, unless the court can see that it tended to the injury of the defendant.

5. EVIDENCE—*on cross-examination.* Where the prosecuting witness in a bastardy proceeding testified that the defendant was the father of the child, and to the time and place where it was begotten, and also to acts of sexual intercourse with the defendant in 1869, some three or four years before: *Held,* that, whether she had intercourse with other men since 1869, was not a proper subject of cross-examination.

6. In this class of cases an exception is made in the strict rules of cross-examination, so far as to permit the defendant to ask the prosecu-

trix whether, within the period of gestation, she has had intercourse with other men, for the purpose of overcoming the probability that the accused is the father of the child.

7. BASTARDY—*day of alleged sexual intercourse not material.* The day on which it is alleged that the prosecuting witness in a bastardy proceeding was got with child, is no more material than in any other class of cases, although she may be mistaken as to the date, yet, if the jury believe, from the evidence, that the defendant is the father, they should find him guilty, as it matters not on what day he became so.

8. SAME—*nature of the proceeding.* Although a proceeding under the Bastardy Act is so far a civil suit as that it may be compromised, yet, so far as the arrest and trial are concerned, and the means of coercing a compliance with the order of the court, or having execution of the judgment, it is essentially criminal in form and effect, and is a matter in which the public have an interest.

9. INSTRUCTION—*repeating.* Although a refused instruction may contain a correct legal proposition, yet, if its substance is given in a different form in others, and it can not be seen that, if it had been given, the result of the trial would have been different, its refusal will not work a reversal of the judgment.

APPEAL from the Circuit Court of Winnebago county; the Hon. WILLIAM BROWN, Judge, presiding.

This was a proceeding in bastardy, commenced by Harriet L. Tuttle against William W. Holcomb.

The case was commenced April 16, 1874, and tried in the county court, where the defendant was found guilty. The defendant appealed from the judgment to the circuit court, where a trial was had, resulting the same as in the county court.

It appears, from the evidence preserved in the record, that the child was born on the 22d day of April, 1874. . The prosecutrix, in her evidence, testified that the child was begotten on July 26, 1873. The court permitted her to testify as to divers acts of criminal intimacy with the defendant in September, 1869, and in October, 1872.

On cross-examination, the defendant's counsel asked the following question: "Have you had sexual intercourse with

any other man but William W. Holcomb since September, 1869 ?"

On objection being made, the court refused to allow the question, to which the defendant excepted.

The other facts material to the case are stated in the opinion of the court.

Mr. C. M. Brazee, for the appellant.

Mr. N. C. Warner, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

A motion was entered in this court to dismiss the appeal, upon the ground that an appeal did not lie from the county to the circuit court, and the case of *Peak* v. *The People*, 76 Ill. 289, is referred to in support of the motion. That motion having been reserved to the final consideration of the case, we have considered and decided the motion as preliminary to the examination of the errors assigned on the record. In *Peak's case*, *supra*, it was held that, by the County Court Act of 1872, no appeal was given to the circuit court in bastardy cases, but the right of appeal is given from the county to the circuit court by the act of 1874. The 187th section of that act (R. S. 344,) declares that appeals may be taken from the final orders, judgments or decrees of the county courts to the circuit courts, etc., in all matters except as prohibited in the next section.

The 188th section allows appeals and writs of error to be prosecuted to this court, from judgments, etc., for taxes and assessments and orders for the sale of lands by administrators, etc.

The language of the 187th section is certainly broad enough to embrace a bastardy case, and the 188th section is too narrow to include it. As the law was amended and now stands, we have no hesitation in saying that the appeal may be taken to the circuit court, and a trial *de novo* be there had.

The trial was had in the county court after the act of 1874 went into effect, and the practice in the case thereafter was regulated by the latter act, which was in force when the trial was had.

The act of 1874 does not require cases then pending to be tried under the act of 1872, but, by its own force, it wiped out and abrogated it, and supplied its place. Nor did the parties acquire a vested right to the rules of practice or modes of procedure prescribed by the act of 1872. They were liable to be rightfully amended, altered or repealed, and others substituted in their stead.

It is earnestly urged that the verdict in this case is clearly against the evidence; that appellant clearly proved an *alibi,* and that the court below should have granted a new trial. That the prosecuting witness gave a connected and reasonable account of the time, place and circumstances of her impregnation by appellant, we think is certainly true. She seems to have undergone a skillful cross-examination, and been entirely consistent in her testimony. But it is claimed, as she said, in her cross-examination, that she only had coition with appellant on the evening of the 26th of July, 1873, so as to become impregnated; if not at that time, he was not the father of the child, but that he did at that time; and that, as he proved an *alibi,* the verdict is wholly wrong.

On a careful examination of the evidence, we fail to find that the *alibi* is by any means clearly proved. On the contrary, the jury might well doubt the fact. There are a number of witnesses who testify that he was, that afternoon, evening and night, in Rockford and its vicinity, and it is equally true that quite a number of witnesses testify that he was in Pecatonica that afternoon, and there are more who testify to his being there than at any other specified place, on that afternoon, though fewer in number who testified to his being at different places at or near Rockford. But it is urged that the witnesses on behalf of appellant were corroborated by dates of instruments and concurring transactions, and the

witnesses on the part of the prosecutrix were not, but relied
alone on their memory for the date. Unless her witnesses
are guilty of perjury, he must have been there with his horse
and buggy at or near that time. Two of these witnesses tes-
tified that he said, on that occasion, that his school had closed
the day before, and another, that he said his school was closed,
and he was going to work in the harvest that was then being
cut. Another says he was there on the Saturday after the
school closed, when witness and others were cutting barley in
a field adjoining the school house. Again, three at least say
they saw a horse attached to a buggy, answering the descrip-
tion of appellant's, hitched, as the prosecuting witness de-
scribes it, at her father's house, just before night, and one of
them says he saw him pass in his buggy just before.

When it is remembered that Pecatonica is near the resi-
dence of the father of the prosecuting witness, and Rockford
is some ten or twelve miles distant, we regard the evidence
irreconcilable, and it was for the jury to determine, from their
manner, their appearance, intelligence and fairness on the
stand, which witnesses were entitled to credit. If appellant's
witnesses are to be believed, he could not have been at the
house of the father at the time, or at the place where she says
the sexual commerce occurred on that evening. It was, then,
for the jury to determine, not merely from numbers, but from
their judgment, what witnesses told the truth.

Again, the account given by the prosecuting witness is
only denied so far as she testified to the coition. He does not
deny, when on the stand, that he went to her father's house,
and that they took the ride at the time and in the manner she
describes. We would have supposed, if so important a fact
was not true, he would not have failed to deny it, when so
many witnesses had testified to his being in the vicinity, and
others testifying to seeing a horse and buggy, answering the
description of his, there at the time the prosecuting witness
swears he was there. We would have expected him to have
denied this, if he was innocent.

All the evidence considered, we are clearly of opinion that the jury were warranted in finding that appellant was the father of the child. And even if there had been less evidence, after two juries of the vicinage, who may be supposed to have some knowledge of the witnesses, and who saw them testify, have found the same way, we would not be disposed to disturb this finding on the evidence.

It is next urged that the court below erred in admitting evidence of the previous acts of coition between the parties at dates so long previous to that in issue; that it did not tend to prove that appellant was the father, by reason of either of those acts. It certainly tended to prove that the relations existing between the parties was such as to make it probable that the intercourse claimed to have occurred, which impregnated her, might have taken place as she described it, and in that way remotely tended to prove the issue. But it was so remote that it would not have been error to have rejected this evidence altogether. And could we see that it tended to the injury of appellant, it would be ground for reversing. But we fail to see that it could have had that effect.

It is next urged that the court, on the introduction of this evidence, and on cross-examination, would not permit the witness to answer whether she had intercourse, after 1869, with other men than appellant. This was not strictly matter of cross-examination. No inquiry had been made with reference to her having connection with other men, and the proper subject of cross-examination was as to the intercourse between the prosecuting witness and appellant.

In this class of cases, an innovation has been made on the strict rules of cross-examination, so far as to permit the defendant to ask the woman whether, within the period of gestation, she has had intercourse with other men, for the purpose of overcoming the probability of accused being the father. But one innovation upon, or an exception to, a rule, does not by any means require other innovations or exceptions. An exception to a rule does not become a precedent

upon which to extend the exception, but can only be authority in like cases. and under similar limitations.

It is urged that the court erred in giving instructions for the people—that the third was erroneous. It states that, if the jury believe that the prosecuting witness was mistaken as to the day, but if they believed, from the evidence, that the defendant is the father of the child, they should find the defendant guilty. The day is no more material in this class of cases than in any other. The question is, whether appellant is the father of the child, and it matters not whether he became so on one day or another. Shall it be said that, in all other cases, criminal and civil, the precise day is not material, and that it shall be in this? Shall we hold that public policy requires that the law shall be so strictly construed and so rigidly administered. that fathers of bastard children shall escape supporting their illegitimate offspring, and that the community shall be burthened therewith? Neither public policy, reason nor justice requires it, nor does precedent sanction it.

But it is urged that this is a civil, and not a criminal, proceeding, and that when the prosecutrix has fixed a specific day when appellant became the father of the child, although mistaken in the date. the court should instruct the jury that, although they may be satisfied that he became the father on another day, still they should acquit him. This is not the language, but is the spirit and substance of the defense. We are aware of no such rule obtaining in any department of the law, except as to estoppels, and there is not the slightest element of an estoppel in this case, or the remotest resemblance to one; nor has counsel for appellant referred us to any rule or fact that should create an estoppel. There was no fraud in fixing the 26th of July as the day that misled appellant to so act as to suffer injury, if the truth was shown. We deem it wholly unnecessary to pursue this question farther.

Opinion of the Court.

It has been held, in such a case as this, so far as the arrest and trial are concerned, that the form is criminal, but the proceeding is, in effect, civil ; that the mother may compromise the prosecution. but, failing to do so, the means of coercing a compliance with the order of the court, or having execution of the judgment, is essentially criminal in form and effect. The public has such an interest in the prosecution and the support of the child as to declare or treat it as a misdemeanor, and thus enforce the judgment by imprisonment until the order is complied with precisely as in cases of fines recovered for misdemeanors, or similar offenses against the public.

The other instructions given for the people, although one may have been inaccurate, presented the law to the jury, so as not to mislead them, and could have worked no injury to appellant.

As to the first of appellant's instructions, whilst it contained a correct legal proposition, still its substance, in a different form, was given in several of his other instructions. Had it been given, we are unable to see that it could have changed the result, and whilst it should have been given, its refusal should not reverse in this case.

On a careful examination of all the instructions, we think all that were refused were incorrect, and calculated to mislead, and the court acted properly in rejecting them. By those that were given, appellant got all he was entitled to, and in fact they were perhaps more liberal than he was entitled to have.

On the entire record, we can not say that there is any error for which the judgment should be reversed. He has had, we think, a fair trial before a jury of his country, and we are not disposed to interfere.

The judgment of the court below must be affirmed.

*Judgment affirmed.*