# C. H. Oxman and Clifton Oxman v. L. C. Garwood.

1. PROMISSORY NOTES—*Liability of Parties Under the Act of 1895.*
—The rights of the lawful holders of promissory notes payable in
money, and the liability of all the parties upon such notes, are the
same as that of like parties to inland bills of exchange, according to the
custom of merchants.

2. SAME—*Liability of Assignors.*—Every assignor of every other
note, bond, bill or other instrument in writing made or to be made, by
any person, body politic or corporate, whereby such person promises to
pay a sum of money or articles of personal property, or any sum of
money in personal property, or acknowledges any sum of money or
article of personal property to be due to any other person, shall be lia-
ble to an action by the assignee or lawful holder thereof, if such
assignee or lawful holder shall have used diligence by the institution
and prosecution of a suit against the maker thereof, for the recovery
of the money or the property due thereon, or damages in lieu thereof.

3. SAME—*Suit Against the Maker Unavailing.*—But if the institution
of such suit would have been unavailing, or the maker absconded
or resided without, or left the State when such instrument became due,
such assignee or holder may recover of the assignor the same as if due
diligence by suit had been used.

4. PARTIES—*Joinder of All Persons Liable.*—Persons severally liable
upon bills of exchange or promissory notes, payable in money, may,
all, or any of them severally, be included in the same suit at the option of
the plaintiff, and any judgment rendered will be without prejudice to
the rights of the several defendants as between themselves.

5. DILIGENCE—*By Indorsee, of No Concern to the Maker.*—The stat-
ute requiring the indorsee of a note to exercise diligence to collect it
from the maker before he can compel the indorser (or assignor) to pay it
is imposed for the protection of the indorser (or assignor), and it is a
matter of no concern to the makers whether the indorsee (or assignee)
used the required diligence or not, for the maker's liability to pay the
note is not in the least changed or affected thereby.

6. SAME—*Waiver of, by Indorser.*—If the indorser waives the per-
formance of the required diligence the maker can not complain, be-
cause his liability is not thereby increased or in any manner changed.

7. STATUTES—*Construction of Vested Rights in Remedies.*—In giv-
ing construction to the various provisions of the "act to revise the
law in relation to promissory notes, due bills, and other instruments
in writing, approved March 15, 1874, and to regulate the conduct of
suits for enforcing payments of certain negotiable instruments on which
parties are jointly and severally liable," (Laws 1895, 262.) courts ought
to construe them so as to carry out the express purpose for which it was

Oxman v. Garwood.

enacted; and with that view in mind, it is but reasonable to hold that the object and purpose of giving the legal holder of bills of exchange and promissory notes, payable in money, the option to include in one suit all or any persons severally liable thereon, was to give him a more speedy, simple and less expensive remedy than he had before, to enforce payment of such negotiable paper.

**Assumpsit,** on promissory note. Trial in the Circuit Court of Champaign County; the Hon. FRANCIS M. WRIGHT, Judge, presiding. Finding and judgment for plaintiff; appeal by defendants. Heard in this court at the November term, 1898. Affirmed. Opinion filed February 7, 1899.

GERE & PHILBRICK, attorneys for appellant, contended that the law in this State applicable to indorsers and their liability on promissory notes at the date of this note was, that it was necessary for a holder to proceed, first, against the makers and prosecute them to insolvency, having execution returned *nulla bona,* or be able to show that the suit against said makers would be unavailing.

Neither of these steps were taken, nor was there any attempt to prove any of these steps were taken to create a liability against the indorser, so as to make him jointly liable with the makers of this note. Nixon v. Weyhrich, 20 Ill. 600; Finley v. Green, 85 Ill. 535.

It can not be contended, successfully, that the statute of 1895 was merely remedial, because it entirely changed the rule of law, entirely changed the legal rights of both an indorser and a maker of promissory notes.

The law merchant was not in force in this State until July 1, 1895. Prior to the passage of that act it was a legal duty and obligation, existing under the law, that the maker must first be proceeded against in order to create a liability against an indorser; and even then, the maker could not be sued jointly with an indorser.

This was the law in force and entered into and became a part of the contract made by appellants in the execution of this note. Andrews & Johnson Co. v. Atwood, 167 Ill. 249.

The act of 1895, permitting an indorser to be sued jointly

with a maker, and create a liability against the indorser under the law merchant, can be nothing more than an impairment of the obligation of the contract, if it is to be applied to notes executed prior to that time.

" As a general rule, a statute is to operate *in futuro* only, and is not to be so constructed as to effect past transactions. A retrospective effect will not be given it, unless it clearly appears that such was the intention of the legislature, especially where it tends to produce injustice or inconvenience. Such an intention must be manifested by clear and unequivical expressions. If it is left doubtful what was the real design, the statute must be so constructed as to have a prospective effect only." Thompson v. Alexander, 11 Ill. 55.

The act of April 4, 1872, being the statute of limitation in regard to promissory notes, had no effect upon notes executed prior to the time of its passage, because the courts refused to give it a retroactive effect. Means v. Harrison, 114 Ill. 248.

It will be conceded that where a statute merely changes the form of the remedy, it is not giving it a retroactive effect to apply it to actions brought on contracts existing prior to the passage of the act, but it can hardly be contended that this statute of 1895, creating a different liability against an indorser and taking away a substantial right guaranteed to the makers of a note at the time of its execution, can be held to be remedial. Fisher v. Green, 142 Ill. 80; Andrews & Johnson Co. v. Atwood, 167 Ill. 249; Woods v. Soucy, 166 Ill. 407; Voigt v. Kersten, 164 Ill. 314.

Even to apply the act of 1895 to this note, and the action herein brought upon this note, it was necessary, not only that the holder of the note present this note for payment on the date of maturity, and that it should have been presented to both of the makers and a refusal by both makers before the indorser should be held liable under the contract of indorsement.

WOLFE & SAVAGE, attorneys for appellee.

The note in question was dated November 3, 1894, and

Oxman v. Garwood.

was due two years after date.  The present statute govern-
ing the rights of parties to negotiable instruments went
into force July 1, 1895.  Laws 1895, 262.  The makers and
indorsers being severally liable upon the note the plaintiff
availed himself of the option contained in the act of 1895 to
include them in the same suit.

Under the law merchant the indorsement of a note
amounts to a contract on the part of an indorser, that if,
when duly presented, the note is not paid by the maker the
indorser will, upon due and reasonable notice given him of
the dishonor, pay to the holder.  Dunnigan v. Stevens, 122
Ill. 396.

And this he may waive so far as presentment is con-
cerned, but this condition attached to the liability of the
indorser may be waived; the statute requiring a prosecu-
tion of the maker is for the benefit of the indorser, and he
may waive it.  The duty of the maker is to pay his note at
the time and place when due.  Givens v. Bank, 85 Ill. 442;
Telford v. Garrells, 31 Ill. App. 446.

What is due diligence in such case varies with the facts
of each case; reasonable promptness, under the circum-
stances, is all demanded by the rule.  Montelius v. Charles,
76 Ill. 303.

The statute of 1895 is as follows as to notes payable in
money:  " The rights of the lawful holder of promissory
notes and the liability of all parties to or upon said notes,
shall be the same as that of like parties to inland bills of
exchange, according to the custom of merchants."  Laws of
1895, page 262.

Under this statute all of the citations applicable to actions
against makers before fixing liability of indorser are inap-
propriate when note is payable in money.

Under the statute parties severally liable may be joined
in one action, and this is so generally, regardless of the
place of residence of either, and it would seem the court in
whose jurisdiction either resides may take jurisdiction of
all in order to render the statute operative in all cases as a
remedial statute, if the plaintiff shall so elect.  Laws 1895,
Sec. 262.

MR. PRESIDING JUSTICE BURROUGHS delivered the opinion of the court.

This was an action of assumpsit by the appellee as plaintiff, against the appellants and one John B. Harris, as defendants, commenced August 20, 1897, in the Circuit Court of Champaign County, and resulting in the plaintiff recovering a judgment against all the defendants for $638.20; from which judgment the appellants alone prosecute the appeal, and urge us to reverse the same on the ground that the court erred in finding from the evidence the facts against them on the issue made by the declaration, plea in abatement to the jurisdiction of the court, replication thereto and issue joined thereon.

The declaration was on a promissory note dated November 3, 1894, payable two years after date to J. B. Harris or order, at his office in the city of Champaign, with seven per cent to be added as damages if not paid at maturity, and reasonable attorney's fees to cover cost of collection; signed by C. H. Oxman, Clifton Oxman, and written on the back thereof, " Pay to the order of L. C. Garwood," signed " J. B. Harris."

To this declaration the defendants, C. H. and Clifton Oxman, interposed a plea in abatement to the jurisdiction of the court, in which they each limit their appearance to the purpose of filing the plea, and then set up in substance that they each were, at the time of the maturity of the note sued on, and from thenceforward have been and now are, residents of the county of White in the State of Illinois; that they each were served with process of this court in this case in the county of White, but neither was served with such process in the county of Champaign; that the only liability of the other defendant, John B. Harris, is that of an indorser of the note, and no suit has ever been instituted or prosecuted against them as makers thereof; that they are now and have been solvent, possessing ample property subject to execution, out of which the payment of the note, ever since its maturity, could have been enforced; that they have resided in Illinois and have had their said

property in this State ever since the note became due; that the note was not presented to them or either of them, or at the office of J. B. Harris, in Champaign, for payment on the day it became due, and that for the reasons aforesaid there is no liability existing in this action against said John B. Harris as indorser of said note; and that the parties sued in this action are not severally liable on said note, all of which they are each ready to verify; wherefore they pray judgment whether this court will take cognizance, etc.

To which . plea the plaintiff interposed a replication in which he in substance says, that the defendants are severally liable on the·note; that it was presented to, and the payment thereof demanded of C. H. and Clifton Oxman, on the day when it became due; and that it was also presented to John B. Harris within a reasonable time after it became due and before this suit was commenced, and its payment demanded of him, wherefore he prays, etc., that the same may be inquired of by the country.

The record shows that the parties then agreed to submit the case to the court for trial without a jury, upon the issues joined by the said plea and replication, and the court heard evidence thereon and found against the Oxmans on their plea to the jurisdiction of the court, and ruled them to plead over, which they declined to do, but elected to stand by their plea to the jurisdiction. Thereupon, for want of further plea, the default of the defendants was entered, and by consent of all parties, the court, without a jury, heard the evidence, assessed plaintiffs' damages at $638.20, and gave judgment therefor against all the defendants.

The evidence showed the execution and delivery of the note sued on and its assignment for value to plaintiff about six months before maturity as charged in the declaration; that when it was made, and ever since that time, the makers (the Oxmans) resided in White county, Illinois, while Harris, the payee and indorser, and the plaintiff, the .indorsee, during the same time lived in Champaign, Illinois; that a short time before the note became due the plaintiff, at the

request of Harris, sent it for collection to a bank in Gra-
ville, White county, Ill., where the Oxmans lived; that the
bank sent a notice to the Oxmans by mail, a few days before
it became due, to the effect that the bank held the note for
collection.   On November 4, 1896, C. H. Oxman came to
the bank and claimed a part of the consideration of the
note had failed and offered to pay a small amount in full
payment of it, which offer was refused.   On November 4,
1895, the bank returned the note by mail to the plaintiff,
who received it next day, and one day thereafter notified
Harris that the makers (Oxmans) had not paid it.   The
makers never left any money at Harris' office in Champaign
to pay the note, nor was it ever presented there for pay-
ment.   The note not being paid by either the makers or the
indorser, the plaintiff brought suit upon it against them in
Champaign county, as heretofore stated, and the Oxmans
were served with process in White county only, and Harris
in Champaign county.

The appellee contends that by virtue of the provisions of
Secs. 7 and 8, Chap. 98, S. & C. Ill. Stat. (1896), pp. 2796–
2801, that Harris as indorser, and the Oxmans as makers,
were each severally liable to him on this note, and he had
the option to include them all in one suit as he did; and as
Harris resided in Champaign county and the Oxmans in
White county, he had the right, under section 2 of the prac-
tice act, to sue them all in Champaign county, serve Harris
there and the Oxmans in White county as he did; and that
when Harris made no defense to this action on the note,
although his liability thereon was both averred and claimed
in the declaration to be that of an indorser of the note,
the appellants, being the makers, and liable thereon uncon-
ditionally, could not defeat the jurisdiction of the Circuit
Court of Champaign County to hear and determine this
case by themselves, setting up and proving that Harris, the
indorser of the note, was not liable to the plaintiff, his
indorsee; for the reason that the plaintiff had not used that
diligence to collect the note at its maturity, which the law
required, as the requirement was for the benefit of the

indorser and he could waive it, as Harris had done, by not pleading it; and such waiver did not injure the appellants, as they were liable on the note anyway.

The appellants, however, contend (1) that the provisions of said sections 7 and 8, under which the appellee claims the right to include in one suit Harris the indorser, with them, the makers of the note, did not take effect until July 1, 1895, which being after the note sued on was given, does not make said sections 7 and 8, as amended in 1895, binding upon the appellants in this case; and (2) that if they were binding then by the express provisions of section 7 it was necessary, in order to make Harris liable as indorser, that the appellee as indorsee and holder of the note, had demanded payment of the note from the appellants as makers on the day it became due, and upon their failure or refusal to pay it then, to immediately notify Harris, the indorser, of such demand and failure or refusal, or to show that he had instituted and prosecuted a suit on the note against the makers upon its becoming due, and obtained judgment and execution against them and had the execution returned *nulla bona*, or show that such a suit would have been unavailing, or that the appellants, the makers of the note, had been out of the State of Illinois since the maturity of the note; and as the evidence showed he had not done so, then Harris was shown not to be liable on the note and there could not rightfully be a judgment against him, consequently no judgment ought to have been rendered against any of the defendants.

Said sections 7 and 8, as amended by the amendatory act of 1895, are as follows:

" Sec. 7. That section 7 of ' an act to revise the law in relation to promissory notes, bonds, due bills and other instruments in writing,' approved March 18, 1874, is hereby amended so as to read as follows: The rights of the lawful holders of promissory notes payable in money, and the liability of all the parties to or upon said notes shall be the same as that of like parties to inland bills of exchange according to the custom of merchants. Every assignor of every other note, bond, bill or other instrument in writing

mentioned in section 3 of this act, shall be liable to the action of the assignee or lawful holder thereof, if such assignee or lawful holder shall have used due diligence by the institution and prosecution of a suit against the maker thereof, for the recovery of the money or the property due thereon, or damages in lieu thereof. But if the institution of such suit would have been unavailing, or the maker had absconded, or resided without, or had left the State when such instrument became due, such assignee or holder may recover against the assignor, as if due diligence by suit had been used."

"Sec. 8. Persons severally liable upon bills of exchange or promissory notes, payable in money, may all or any of them severally be included in the same suit at the option of the plaintiff, and judgment rendered in said suit shall be without prejudice to the rights of the several defendants as between themselves."

These sections, as thus amended, went into effect July 1, 1895, and are a part of "an act to amend section 7 of 'an act to revise the laws in relation to promissory notes, bonds, due bills and other instruments in writing,' approved March 18, 1874, and to regulate the conduct of suits for enforcing payments of certain negotiable instruments on which parties are jointly or severally liable." Session Laws 1895, p. 262.

Sec. 7 of the act of 1874, before it was amended, was as follows:

"Every assignor, or his heirs, executors, or administrators, of every such note, bond, bill or other instrument in writing, shall be liable to the action of the assignee thereof, or his executors or administrators, if such assignee shall have used diligence, by the institution and prosecution of a suit against the maker thereof, or against his heirs, executors, or administrators, for the recovery of the money or property due thereon, or damages in lieu thereof; provided, that if the institution of such suit would have been unavailing, or the maker had absconded, or resided without or had left the State, when such instrument became due, such assignee, or his executors or administrators, may recover against the assignor, or against his heirs, executors, or administrators, as if due diligence by suit had been used."

By the express terms of the note sued on in this case, the appellants, as makers, were primarily liable to pay the same

at maturity to Harris, the payee, or to whomsoever he might assign the same; and when Harris, for value, in June or July, 1896, assigned the note to the appellee, he not only thereby transferred the title thereto, but thereby also agreed with the appellee, as his indorsee, that the makers would pay him the note at maturity, and in case they did not, that he (Harris) would pay it, if the appellee would exercise that diligence to collect it from the makers which the law required. And while it is true the act of 1874, both before and as amended in 1895, required the indorsee of such a note as the one sued on in this case to exercise certain diligence to collect the note from the maker before he could make the indorser (or assignor) pay it, yet this requirement was imposed for the benefit and protection of the indorser (or assignor); and it is a matter of no concern to the makers whether the indorsee (or assignee) exercised the required diligence or not, for the reason that the maker's liability to pay the note was not in the least changed or affected thereby. If the indorser waived the performance of the required diligence the maker could not complain on that account, because his liability was not thereby increased or in any manner changed. See Telford v. Garrells et al., 132 Ill. 550, p. 557.

As the evidence showed that Harris, for value, sold and assigned the note to the appellee some five or six months before the note, by its terms, became due, his liability thereon to the appellee is to be measured by the act of 1874, as amended in 1895; and by the express provisions of Sec. 8 thereof, as thus amended, the appellee as indorsee (or assignee) of Harris was given the option to enforce the payment of this note against Harris, the indorser, by including him in the suit with the appellants, the makers, and recover judgment against all in the same suit, the judgment, however, is to be without prejudice to the rights of several defendants as between themselves and as the exercise of this option does in no manner change or effect the liabilty of the appellants as makers of the note, they can not complain. See Telford v. Garrells et al., *supra*.

But the appellants insist that the effect of allowing the appellee to include Harris as a defendant with them in this suit, and by serving him in Champaign county, where he resides, and serving them in White county, where they reside, and compelling them to litigate their liability on this note in Champaign county, where they neither reside nor were served, is to deprive them of their substantial right to be sued on this note in the county in which they reside or could be found; and as the note was executed in 1894, all their rights and liabilities arising as makers thereof, are to be measured and determined by the law as it was at that time, and not as amended in 1895, without which amendment Harris could not be included with them as defendants in a suit on this note.

We think a complete answer to this contention is that the expressly declared object and purpose of the amendatory act of 1895 is, " to revise the law in relation to promissory notes, due bills and other instruments in writing, 'approved March 15, 1874'; and *to regulate the conduct of suits for enforcing payments of certain negotiable instruments on which parties are jointly and severally liable;* " and in giving construction to the various provisions thereof we ought to construe them so as to carry out the express purpose for which it was enacted; and, with that view in mind, it is but reasonable to hold that the object and purpose of giving the legal holder of bills of exchange and promissory notes, payable in money, the option to include in one suit all or any persons severally liable thereon, was to give him a more speedy, simple and less expensive remedy than he had before, to enforce payment of such negotiable paper. And, since, the appellants, as makers of the notes sued on, had no vested right in the particular remedy, or special mode of enforcing payment thereof against them, as it existed when the note was executed (see Woods v. Soucy, 166 Ill. 407; People ex rel. v. Comrs. of Cook Co., 176 Ill. 576, 587; and Holcomb v. People, 79 Ill. 409), they have no right to insist that the appellee should be confined in proceeding to enforce payment against them, to pursuing the remedy as it existed, when they executed it.

Finding that the Circuit Court of Champaign County committed no reversable error in this case, either in its proceedings or in the conclusion reached, we affirm its judgment. Judgment affirmed.

(Justice Wright, having presided in the Circuit Court when this case was tried there, took no part in it, in this court.)