YELLOW PINE PAPER MILL CO. v. LYONS. (No. 6,322.)

(Court of Civil Appeals of Texas. Galveston. June 26, 1913. Rehearing Denied Oct. 9, 1913.)

1. CONTINUANCE (§ 22*) — DISCRETION OF COURT—SICKNESS OF WITNESS.

Where a witness for the defendant was present in court although sick, and there was some evidence that he was unable to testify, and after he had been put upon the stand by the plaintiff he stated on cross-examination, with the help of defendant's counsel, that he was in such a physical condition that he was not responsible for what he might say, whereupon the defendant refused to cross-examine further, but he had answered the questions asked by the plaintiff with apparent clearness, and the' facts concerning which he was to testify were few and simple, it was not an abuse of the discretion to overrule the defendant's motion for a continuance based upon the condition of the witness.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. §§ 58–67; Dec. Dig. § 22.*]

2. APPEAL AND ERROR (§ 662*)—BILL OF EXCEPTIONS — CONCLUSIVENESS — QUALIFICATION BY TRIAL COURT.

The Court of Civil Appeals is bound by the trial court's statement of the circumstances set forth as a qualification to the bill of exceptions.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2850–2852; Dec. Dig. § 662.*]

3. CONTINUANCE (§ 47*)—ADMISSIBILITY OF EVIDENCE—DISABILITY OF WITNESS.

Where a witness, on the ground of whose illness a continuance was asked, was present in court, it was nevertheless error to refuse to permit a physician to testify that witness' physical and mental condition was such that he could not testify clearly and accurately.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. § 141; Dec. Dig. § 47.*]

4. TRIAL (§ 412*)—WAIVER OF OBJECTIONS—LEADING QUESTION.

Where the opposite party thereafter withdrew his objection to such testimony, and the physician was recalled, and the statement made by counsel in his offer of the evidence was read to him, and he was asked if that was true, an objection to the question as leading was properly sustained, since the opposite party by consenting to the testimony did not waive his right to object to the form of the questions.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 182, 974–977; Dec. Dig. § 412.*]

5. APPEAL AND ERROR (§ 1045*)—HARMLESS ERROR—SELECTION OF JURY.

Where the overruling of a challenge for cause to a juror is assigned as error, and it appears that the juror was removed on peremptory challenge, but it does not appear that the party complaining used his other five challenges, or was compelled to accept an objectionable juror, no prejudice is shown to have resulted from the ruling.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4124–4127; Dec. Dig. § 1045.*] .

6. APPEAL AND ERROR (§ 1060*)—MISCONDUCT OF COUNSEL—ARGUMENT—FACTS NOT IN EVIDENCE.

In an action for personal injuries, where the plaintiff's attorney referred to plaintiff's suffering when he thought that he could not support his wife and children, and there was no evidence that he had any children, such an argument would not influence a jury of common understanding and intelligence, especially when the court instructed the jury to disregard the statement.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4135; Dec. Dig. § 1060.*]

7. APPEAL AND ERROR (§ 1060*)—HARMLESS ERROR—MISCONDUCT OF COUNSEL.

An assignment of error based upon a statement by plaintiff's counsel in his argument, suggesting a minimum amount as a verdict, which he said would be sustained, which remark the jury were instructed to disregard, will not be sustained, where the verdict was for a sum much less than the suggested amount, and was not excessive.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4135; Dec. Dig. § 1060.*]

8. APPEAL AND ERROR (§ 1050*)—INJURIES TO SERVANT — ADMISSIBILITY OF EVIDENCE — KNOWLEDGE OF DANGER.

Where a common laborer, who was injured by the explosion of a steam pipe upon which he was working, had testified that he had no knowledge of the working of steam, testimony by an expert in the use of steam that a common laborer would not know the danger in working on a pipe into which the steam had been turned was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

9. TRIAL (§ 133*)—MISCONDUCT OF COUNSEL—IMPROPER QUESTIONS—CURE BY COURT.

In an action for personal injuries, where a fellow servant who was injured in the same accident testified, and an objection to a question asked him whether he had compromised his claim against the company was sustained, and the jury were instructed to disregard it, the asking of the question could not be assigned as error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 316; Dec. Dig. § 133.*]

10. DAMAGES (§ 132*)—EXCESSIVE DAMAGES—PERMANENT INJURIES TO ARM, LEG, AND BODY.

In an action for personal injuries to a laborer 44 years old, who was earning $1.75 a day prior to the accident, and whose leg and arm were both so badly broken that neither had properly healed, and a physician testified that the leg should be rebroken or amputated, and the plaintiff was also badly scalded by steam and permanently incapacitated for work, a verdict for $13,500, although it exceeded his earning capacity, will not be disturbed as ex-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

cessive in view of the suffering caused by the injuries.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. § 132.*]

11. APPEAL AND ERROR (§ 1013*)—DAMAGES (§§ 97, 102*) — MEASURE — PERSONAL INJURIES—PHYSICAL AND MENTAL SUFFERING.

There is no measure of damages for physical and mental suffering except what an honest and impartial jury shall deem adequate, and their judgment must be accepted.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3993–3995; Dec. Dig. § 1013;* Damages, Cent. Dig. §§ 233, 234, 255–259; Dec. Dig. §§ 97, 102.*]

12. APPEAL AND ERROR (§ 1013*)—REVIEW—VERDICT—EXCESSIVE DAMAGES.

Where a verdict for physical and mental suffering is so large as to indicate that it was not the judgment of an honest or impartial jury, but was based upon prejudice or sympathy, the court should not hesitate to correct the verdict.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3993–3995; Dec. Dig. § 1013.*]

13. TRIAL (§ 233*)—INSTRUCTIONS—NECESSITY—BURDEN OF PROOF.

Where the issues upon which the jury were to pass were correctly set forth in the charge, error cannot be assigned to the failure of the court, in its preliminary statement of the case, to state the allegations of the petition in connection with an instruction that the burden of proof rests upon the plaintiff.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 527–530; Dec. Dig. § 233.*]

14. TRIAL (§ 192*)—INSTRUCTIONS—ASSUMING FACTS—UNDISPUTED FACTS.

Where there was no dispute that the injuries to plaintiff continued up to the time of the trial, it would not be error in the charge to assume that his suffering continued to that time, since that would follow inevitably in obedience to natural laws.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 432–434; Dec. Dig. § 192.*]

15. MASTER AND SERVANT (§ 276*)—INJURIES TO SERVANT—BURDEN OF PROOF—CAUSE OF ACCIDENT.

Where the evidence in an action for injuries to a servant was sufficient to show that the cause of the accident was an explosion due to a defect in a steam pipe, the plaintiff need not show the precise character of the defect to be entitled to recover.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 950–952, 954, 959, 970, 976; Dec. Dig. § 276.*]

Appeal from District Court, Orange County; W. B. Powell, Judge.

Action by A. L. Lyons against the Yellow Pine Paper Mill Company. Judgment for the plaintiff, and defendant appeals. Affirmed.

Holland & Holland, of Orange, for appellant. Bisland, Adams & Bruce, of Orange, Smith & Crawford, and C. E. Mead, all of Beaumont, for appellee.

REESE, J. This is an action by A. L. Lyons against the Yellow Pine Paper Mill Company to recover damages for personal injuries received by him while at work in defendant's paper mill. A trial with a jury resulted in a verdict and judgment in favor of plaintiff for $13,500. Its motion for a new trial having been overruled, the defendant appeals.

It was alleged in the petition that the accident through which appellee received his injuries occurred while he and a fellow servant, one Orr, were engaged, by order of Becker, their foreman, in repairing a steam pipe which was leaking, when an explosion of steam occurred, with disastrous results to appellee; his injuries being specifically set out, and being alleged to be serious and permanent.

Appellee based his suit on the ground that the appellant was negligent in that the pipes and fittings upon which he was at work were not of sufficient strength and the proper construction to withstand the steam pressure used on same; that said pipes, fittings, and joints had become rusted, worn, and weakened, and thereby unsafe; that appellant negligently put appellee to work repairing said joints while steam pressure was on in said pipe; that appellee was an inexperienced man, and was not familiar with the kind of work he was engaged upon at the time he was injured, and not familiar with the danger of working around a pipe joint while steam was on, and did not know that steam was on at the time he was at work; that appellant failed to warn him of the danger, and failed to furnish him with a safe place to work and safe appliances with which to work.

Appellant pleaded a general demurrer and several special exceptions, which need not be further referred to, and further pleaded the general issue, contributory negligence and assumed risk.

### Conclusions of Fact.

At the time of the accident in question appellee, a man 44 years of age, was in the employ of appellant in its paper mill. He was a member of the "roustabout gang," and seems to have been engaged in doing any kind of unskilled labor that was required to be done about the mill. His wages were $1.75 per day. Another member of the roustabout gang was W. A. Orr. Appellee was inexperienced in working about machinery, and not acquainted with the practical working and operation of steam and the dangers of explosion in certain circumstances. One Becker was the foreman or boss of the roustabout gang. He had authority to direct the members of this gang in their work, but did not have the power to hire or discharge the men. The mill had been closed down for several months, and they were preparing to put it in operation again, and to this end were examining the steam pipe to discover leaks, and stopping the same. For this purpose the steam was run into the pipes. Where the joints of the steam pipes come

together there were flanges on each end, which fitted close together, having a gasket between to enable them to be so closed up as to prevent the escape of steam. These joints were fastened together by means of bolts through the flanges, which, when screwed up tight, brought the two ends of the pipes tightly together. On the morning of the accident Becker, in examining the pipes, discovered a loose bolt at one of these joints in a pipe some distance up from the floor, and directed appellee and Orr to fix it. He then went to another part of the mill. In screwing up this loose bolt, appellee held the end of the bolt with a wrench to keep it from turning, while Orr with another wrench screwed up the nut on the other end of the bolt. They had not been so engaged more than a minute or two when there was an explosion, which blew appellee through a window into an adjoining room, about 60 or 70 feet, breaking his leg and wrist, and scalding and otherwise very seriously injuring him. We find that the pipe was defective and unsafe under the steam pressure put upon it, chargeable to the negligence of appellant, and that this was the proximate cause of appellee's injury. We further find that appellee's injuries are of such a character as to justify the amount of the verdict and judgment. In finding these conclusions, we have followed the verdict of the jury in resolving conflicts in the evidence in favor of appellee.

[1] The only persons present at the time of the accident were appellee himself and W. A. Orr. Appellant had a subpœna duly issued and served upon Orr, and when the case was called for trial, the witness being absent, made a motion for a continuance, accompanying the same with a certificate from a physician that the witness was sick and not able to attend. Appellee requested time to answer the application, which was finally overruled, and appellant excepted. We copy the following from the qualification or explanation of the district judge of appellant's bill of exceptions to the ruling of the court in overruling the application:

"That the plaintiff was given until 1:30 p. m. to controvert the application for continuance, and when that hour came the witness W. A. Orr was in court, and counsel for plaintiff asked the witness, without being sworn, if he felt well enough to testify, and he replied, if he could do so at once, he might. Dr. Lawson was then present in court, and he was asked what he thought about the witness testifying, and he replied, 'I would not say he could not testify if he was put on the stand at once, and not required to lie around the courthouse all day waiting.' Mr. Holland, attorney for defendant, then asked the witness Orr how he felt, and the witness said he did not feel well, and would not have come but thought the court had sent for him, and he had to come; that his head hurt him all the time, and that he lay down most of the time, and that he could not remember everything well. After which the defendant renewed its motion to continue, because it claimed the witness was not physically and mentally able to testify. The court overruled the motion, to which the defendant excepted. The court told Mr. Orr that he need not sit around the courtroom unless he so desired, but he would be sent for when needed; whereupon the case proceeded to trial, and when the plaintiff had rested his case he tendered the defendant the witness Orr, and stated he was in the courtroom and ready to testify. The counsel for defendant thanked him, and said they were running their part of the case, and declined to then use the witness Orr, but proceeded to put on the other witnesses. At or about the close of the defendant's testimony the plaintiff again called the counsel's attention to the presence of the witness Orr, and defendant put Dr. Lawson on the stand, and asked him the following question, 'Is the witness (Orr) capable mentally of testifying in this case?' which was objected to by the plaintiff, because the witness was in the courtroom, and could be observed by the court and jury. The objection was sustained, and the defendant's counsel, Mr. Holland, stepped to the stenographer, and in a low tone, so that the jury could not hear, stated that he expected to prove by the witness Dr. Lawson the following: 'That he, Orr, is not mentally capable of testifying; that his mental condition is temporary, is caused by his physical condition, being sick at the present time and under his care, and he is able to be about, but that if put on the witness stand his nervous condition is such that at least he would answer questions in one way one time, and probably in another way at another time, and that he would not be responsible for his answers in any event.' The doctor was then asked in a low tone if what he, Holland, had dictated was substantially his answer, and he answered, 'Yes, substantially.' None of this was to the jury. At this point the defendant refused to put the witness Orr on the stand, and again renewed his motion to continue, although the witness was present, which was overruled, and the defendant duly excepted.

"After the defendant had rested his case, the plaintiff put the said witness W. A. Orr on the stand, and he testified clearly, distinctly, and intelligently, without objection on the part of the defendant because of his mental condition. After the plaintiff turned the witness over to the defendant, he was asked by Mr. Holland, attorney for defendant, 'How do you feel physically?' and with the help and suggestion of the counsel he made the following answer: 'My head wanders. I cannot hold nothing. I cannot remember any detail as a result of my physical condition; at the present time I could

not be responsible for anything I might say. I would get entirely off the subject, and say things I ought not to say, and forget things I ought to know.' Mr. Holland declined to further cross-question the witness.

"I failed to note any mental incapacity about the witness; he answered every question put to him by the plaintiff without reflection or hesitation. At this point of the trial the plaintiff withdrew his objection to Dr. Lawson's testifying, whereupon he, Lawson, was again put back on the stand, and the defendant's counsel, Mr. Holland, read the statement that he, Holland, had made to his bill of exception, and which Dr. Lawson privily stated to him and the stenographer was substantially correct, before he had heard the witness testify. The plaintiff objected because it was leading and put in the mouth of the witness what he wanted, and what he, Holland, had said, and not the witness. The objection was sustained, and the court told Mr. Holland he could interrogate the witness on the subject in the proper way, but that it was improper to ask him if what he, Holland, had appended to his bill of exception was or not true. Holland contended that plaintiff had withdrawn his objection, which was by the plaintiff admitted to be true; that he had withdrawn his objection to Dr. Lawson's testifying to opinion of the physical and mental condition of the witness, but not to that what Mr. Holland had dictated was true. The court sustained the contention of the plaintiff, and Mr. Holland refused to ask the witness any further questions, and excepted to the ruling of the court."

[2] This ruling of the court in refusing appellant's application for a continuance is complained of by the first assignment of error. Appellant insists so strenuously that this action of the court was arbitrary, unjust, and an abuse of the court's discretion, and that by reason thereof it was deprived of a fair trial, that we have fully set out the court's statement of the occurrences, which we are bound to accept. The application set out fully what was expected to be proven by the witness, which was material to the defense. The question presented by this assignment is, Did the trial court abuse its discretion to appellant's prejudice in overruling the application for a continuance and requiring appellant to go to trial in the circumstances stated? The court had the witness before it, interrogated him, and had full opportunity to observe his physical and mental condition. He was finally put on the stand by appellee, and questioned at some length. His testimony is in the record. To questions by appellant's counsel, after he had been examined by appellee's counsel, the witness stated that he was not physically or mentally able to testify, that his head wanders, and he cannot remember any detail as a result of his physical condition at that time, that he could not be responsible

for anything he might say, he would get entirely off of the subject, and say things he ought not to say, and forget things he ought to know. Appellant then declined to cross-examine the witness, or to examine him as a witness, and he was excused.

Many things come under the judge's observation during the course of a trial which cannot be adequately reflected in the record, but which might properly influence the court in a matter of this kind. The facts peculiarly within the knowledge of this witness were necessarily few and simple. He and appellee were at work on the pipe only two or three minutes at the longest. They were engaged in a very simple operation when the explosion came suddenly and unexpectedly. The witness testified as to part of this, and it appears to us that his testimony in the statement of facts was clear and intelligent. From the witness' general appearance, his demeanor under examination as a witness, the unhesitating and intelligent manner with which he answered questions, notwithstanding his own testimony as to his physical and mental condition, the trial court concluded that there was no substantial reason why he should not be called on to give an account as a witness of the few and simple facts shown by the statement in the motion for continuance to be within his knowledge, and which were expected to be shown by him. We are asked to say that the court acted arbitrarily, unjustly, and outside of the discretion necessarily vested in a trial judge. We think it would be an abuse of the discretion vested in this court for us to so say. Instead of excusing the witness after appellee had examined him upon the witness' naked statement as to his physical and mental condition, we think appellant should have then sought by proper questions as to the facts of the occurrence to show whether the witness could give an intelligent account of them. If in fact he showed himself then physically and mentally incapable of doing so, this fact should not have escaped the discernment of an impartial court. We think the court did not commit reversible error in overruling the application for a continuance, and the first assignment of error must be overruled.

[3] Closely connected with the question presented by the first assignment of error is that presented by the twelfth assignment, which complains of the ruling of the court in sustaining the objection of appellee to the testimony of Dr. Lawson, as set out in the same bill of exceptions above referred to. When this testimony was first offered in connection with the motion for a continuance, appellees objected on the ground that, the witness being before the court, the court could determine for itself his mental and physical condition. This objection was then sustained, which, we think, was error. What Dr. Lawson would have testified to was embodied in a statement dictated by appellant's

counsel to the stenographer, to be incorporated in the bill of exceptions.

[4] Afterwards, as shown by the court's explanation and qualification of the bill as heretofore set out, appellee's counsel withdrew his objection to Dr. Lawson testifying in the matter, and he was called by appellant. Instead of then examining the witness as to the mental and physical condition of the witness Orr, appellant simply read to the witness Lawson the statement which had been dictated to the stenographer, and asked him if it was true. Counsel for appellee objected to this manner of interrogating the witness, which objection was sustained by the court, who, at the same time, told appellant's counsel that he was at liberty to examine the witness as to the mental and physical condition of the witness Orr, and his capacity to testify, but could not do so in the manner proposed by reading to him the statement referred to, and asking him if it was true. Counsel for appellant then declined to examine the witness in any other way, and took a bill of exceptions to the ruling of the court. The court's ruling was entirely correct. By withdrawing his objection to Dr. Lawson testifying, appellee did not agree that he might be examined in the way proposed. It is not explained why appellant was unwilling to ask Dr. Lawson such questions as might tend to elicit his professional opinion as to the mental and physical capacity of Orr to testify, when offered the opportunity to do so. The twelfth assignment of error is without merit, and is overruled.

[5] One W. T. Posey was drawn as a juror, and was challenged for cause by appellant, which challenge was not allowed by the court, whereupon appellant challenged him peremptorily. The action of the court in refusing to allow the challenge for cause was duly excepted to, and is made the basis of the second assignment of error. Appellant had six peremptory challenges. The bill of exceptions shows that he exhausted one of them on this juror; but for all that appears in the bill, or is shown by the record, this is the only one of the six challenges that was used. It is not shown that any objectionable juror was forced upon him for want of a peremptory challenge, and he is not shown to have been prejudiced in any way by the erroneous ruling. Under the well-settled rule in this state, the action of the court, if erroneous, is not ground for reversal. Railway Co. v. Terrell, 69 Tex. 651, 7 S. W. 670; Snow v. Starr, 75 Tex. 414, 12 S. W. 673; Wolf v. Perryman, 82 Tex. 115, 17 S. W. 772. The assignment is overruled.

[6] In addressing the jury appellee's counsel used the following language: "Plaintiff's mental suffering must be intense when he recognizes the fact that he is unable to care for and support his wife and children dependent upon him, and that this condition will continue to exist as long as he lives." Appellant objected on the ground that the language used was an appeal to the passions of the jury. There was no evidence that appellee had any children. The court, at the time, as appears from the bill of exceptions, told the jury that it was improper, and not to consider or be influenced by it. We must credit the members of the jury with common honesty and common intelligence. We think no juror with these qualities would be improperly influenced by such talk as this, coming from an attorney in the cause, even without having their attention called to the impropriety of using it by the trial court.

[7] Further objection is made by the sixth assignment of error to language of counsel in suggesting to the jury what should be the amount of their verdict, suggesting a minimum of $40,000, and that "$30,000 would stand." The court specially charged the jury to disregard such remarks as improper, and the jury showed how much they were influenced by them by returning a verdict for $13,500, which, as will be seen later, we do not consider so excessive as to require a remittitur. The assignments referred to are overruled.

[8] Appellee was a common laborer, and according to his own testimony had no knowledge of the working of steam. There was no prejudicial error in allowing a witness, who was a proven expert in all matters relating to the use of steam, to testify over the objection of appellant that "a common laborer not acquainted with steam would not know the danger of working on pipe with steam turned on." It may be, and so it seems to us, that any member of the jury would know that a man not acquainted with steam would not know the danger of working with steam. If so, it did no harm to allow this witness to state so obvious a fact.

[9] When the witness Orr was on the stand, appellee's counsel asked him "whether he had not compromised his claim against appellant." Appellant objected, and the objection was sustained by the court, and the witness was not allowed to answer the question. The jury was told by the court at the time that the question was improper, and they would not consider or be influenced by it. The fifth assignment of error complains of the action of counsel in asking the question. There is no merit in the assignment.

[10] By the seventh assignment of error appellant complains of the judgment, which was for $13,500, as excessive. Appellee was 44 years of age, a common laborer earning, when injured, $1.75 per day. The evidence shows that he is permanently disabled for such work as he has been accustomed to do. If this was all, then appellant's argument is appropriate that the judgment is largely in excess of the amount of proper compensation for such loss of earning power. But this is not all. Appellee was by force of the ex-

plosion thrown through a window and out of the room where he was at work. He thus, as the jury evidently thought, and as we think, truthfully, describes his injuries: "I got my leg broke there, and my arm and hand mashed up. I got my leg broke about 2½ inches below the joint—you might put it 3 inches—my right leg. . * * * I cannot walk on that leg, or stand on it. I can sort of lift it up; it has very little motion. I can take it and lift around a little bit, make out like I am going to lift it. * * * I do that to make it come to itself. I haven't done anything but lay around the house since this accident. I said that my arm was hurt. It was broken, mashed in. * * * It is my left arm. It affects the use of my arm considerably. There is a good deal of difference between the motion of it and the other one. I can lift it about two-thirds of the way straight up. I can bring it clear around in front of me. I can get this one about half as far back as my right arm. The left arm was broken right there, I suppose, about two inches above my wrist. I was also scalded * * * from about an inch above the pants line * * * to the ends of my fingers, and on top of my head; it left my skin raw. It is not raw now; it is red now; it shows signs all right. * * * It burnt my eyes or face—face was scalded. It peeled off the next three or four days. My eyes are weaker some to what they were; but I don't know whether it is from that or not. The way I noticed about my eyes, I cannot see to read as well as before I got hurt. Where I was scalded the skin came off like skinning a squirrel. I suffered a great deal from it. I don't know as I can describe how much I suffered; but for 18 or 20 days they dressed those wounds and scalds, and it felt like blood running out every time they would pull them off. * * * I suffered from it every time they dressed the wounds; it hurt mighty bad when they were dressing them. I was in bed until about the 1st of December, or a little after the first. I was injured in my shoulder and knee. I cannot bend my knee back as far as I used to. It wasn't broken; it just doesn't go down like it used to. It don't go back as far this way as the other one does. My shoulder hurt all the time for a month or more; I couldn't lay on it at night, and not now, that is, to go to sleep. I turn over and lay on that three or four minutes to rest my back, and have to turn over before I go to sleep; I cannot go to sleep on my left side. Before I was hurt my physical condition was good and healthy as most anybody; my limbs were all firm and sound." His wife, with like evident truthfulness, testified: "He cannot work, and has not worked; cannot use his hand. He cannot do anything, cannot walk, cannot take a step, and has not done a lick of work or done a thing since he was hurt. I don't re-

member the correct time he did remain in bed. I know he was in bed for about two months; over a month before he set up any, or two months nearly before he set up in bed." Dr. Goldstein testified that appellee's leg ought to be rebroken and reset, or cut off, and the X-ray pictures of the condition of the bones of the leg show that the ends of the bones at the point of fracture have never met. The lower end rests upon the upper part of the bones above the break, and at a considerable angle. The whole testimony discloses a fearful injury, necessarily accompanied with very great physical pain, likely to continue in greater or less degree.

[11, 12] As long as compensation goes beyond mere loss of earning power (and there is no rule of justice, and certainly none of law, that confines it to that), and extends to physical and mental suffering, for the measurement of which there is no recognized standard except what an honest and impartial jury, uninfluenced by passion, prejudice, or other improper motive, may deem adequate, their judgment must be accepted. Sometimes the amount awarded is so large as to lead to the conclusion that it was not the result of such judgment, but must rest upon prejudice or sympathy, in which case the courts should not hesitate to correct it. But this case does not appear to us to call for such correction. The assignment is overruled.

[13] There is no merit in the eighth assignment of error, complaining of the preliminary statement of the case in the charge, because the allegations in the petition are not stated in connection with the instruction that the burden of proof rests upon plaintiff to establish the necessary allegations of his petition. The issues upon which the jury was called upon to pass were sufficiently stated in the charge upon such issues.

The ninth assignment of error is overruled without discussion. There is no merit to the objection presented to the charge.

By the tenth assignment of error objection is made to the third paragraph of the charge submitting the issue of negligence pleaded by appellee and presented by the evidence as to the defective pipe as the proximate cause of the injury to appellee. None of the objections to the charge set out in the assignment are tenable. None of the facts charged to have been assumed were in fact so assumed, though some of them might very well, without impropriety, have been assumed to be true, as they were established by the uncontradicted evidence, and there was no dispute about them; but the charge leaves them all to the decision of the jury, and affords no ground for criticism that it is "upon the weight of the evidence." The court does not instruct the jury that appellee could recover because of the acts of Becker, his immediate boss, but submits only the issue of negligence in the matter of defective pipe, with which

it is not pretended that Becker had anything to do. The assignment is overruled.

[14] The court does not assume, in that portion of the charge complained of by the eleventh assignment of error, that the plaintiff had suffered mentally and physically up to the time of the trial; but it would not have been objectionable if it had done so. Appellee was an ordinary human being mentally and physically. There was no dispute as to his injuries. His mental and physical suffering follow'ed inevitably in obedience to natural laws.

Our conclusions of fact afford sufficient answer to the thirteenth assignment, which complains of the refusal to instruct the jury to return a verdict for defendant. The evidence on the whole presents the issue of negligence of appellant in providing and using defective steam pipe not sufficient to withstand the steam pressure, causing the explosion.

Several special charges were given at the request of appellant, and by the fourteenth, fifteenth, and sixteenth assignments of error appellant complains that the verdict is contrary to the law as laid down in these special charges. In connection with these charges we have examined very carefully the evidence upon the issues presented. We can only repeat, in answer to these assignments, that the evidence was sufficient to support the verdict, even under the principles of law, very favorable to appellant, stated in these special instructions. The assignments are severally overruled.

[15] What we have said sufficiently disposes of the seventeenth assignment. The evidence was sufficient to show that the immediate cause of the accident was an explosion of the steam pipe, and that this was due to some defect in the pipe. That the precise character of this defect is not shown is not sufficient to bar appellee of his right to recovery.

We have examined carefully the entire evidence in the record in connection with the several assignments of error. The case was submitted to the jury in charges exceptionally favorable to appellant. We can see no just grounds for reversal, and the judgment is affirmed.

Affirmed.