## L. D. Morrison v. The People ex rel. Cora Belle Richard.

1. BILL OF EXCEPTIONS—*When Presumed to Have Been Filed in Time.*—Where the record does not show that time was given to file bond and bill of exceptions nor that bond and bill of exceptions were filed in term time, if the bill of exceptions is signed by the judge, it will be presumed to have been presented and filed in apt time.

2. JURY—*Province to Determine Questions of Fact, etc.*—In cases where the evidence is conflicting, but there is sufficient to sustain a finding, the verdict will not be disturbed.

3. IMPEACHMENT—*Inconsistent Statements out of Court.*—A witness is not necessarily impeached because he has made statements out of court inconsistent with a portion of his testimony; such statements may be explained, and it is then for the jury to say at which time the witness told the truth.

4. BASTARDY—*Exhibition of the Child to the Jury.*—At the request of a juror the child was shown to the jury. It was not offered in evidence by the people. There was an effort made by the defense to prove the father to have been an Italian, and this perhaps justified the court in complying with the juror's request.

5. PRACTICE IN APPELLATE COURT — *Objection to Evidence.*—An objection that the jury were allowed to seal their verdict and separate without agreement of counsel, or direction of the court, can not be made for the first time in the Appellate Court.

6. JUDGMENT—*Form of, in Bastardy.*—A judgment in a bastardy proceeding was entered against the defendant for $350, to be paid, $100 April 1, 1893, and $12.50 every three months until paid, and for cost. *It was held* that such a judgment is not forbidden by section 8 of Ch. 17, R. S., entitled Bastardy.

Morrison v. The People.

Memorandum.—Bastardy proceeding.   Appeal from the County Court of Clinton County; the Hon. JESSE JONES, Judge, presiding.   Heard in this court at the August term, 1893, and affirmed.   Opinion filed March 23, 1894.

## STATEMENT.

The defendant is a negro, his wife an octoroon, and their daughter, who testifies, is a mulatto.   The prosecutrix has a taint of negro blood and is molded in Celtic cast.   Genealogically speaking, she is one part negro to fifteen parts white; the wife of defendant and her mother are sisters.   Her father was a thriftless white man, who early abandoned her.

VAN HOOREBEKE & FORD, attorneys for appellant.

M. P. MURRAY AND J. J. McGAFFIGAN, attorneys for appellee.

MR. JUSTICE GREEN DELIVERED THE OPINION OF THE COURT.

This was a suit under the bastardy act, brought upon the complaint of Cora Belle Richard, charging that appellant is the father of her bastard child.   The complaint was filed in justice's court November 30, 1892, and the cause was tried in the County Court, by a jury, at the February term, 1893, who, by their verdict, found that Cora Belle Richard is an unmarried woman; has never been married; that she has been delivered of a bastard child; that the defendant is the father of said child, and said child is now living.

Defendant filed his motion for a new trial, which was overruled and defendant excepted.   The court entered judgment against defendant for $350, to be paid to the clerk in installments of $100, payable April 1, 1893, and $12.50 every three months, until the whole amount is paid, and that defendant pay all costs.   Defendant craved and was granted an appeal to this court, but no time was fixed for filing bond or bill of exceptions.   Bond was approved by clerk and filed March 8, 1893, and bill of exceptions was filed March 4, 1893, and was signed by the judge.   When the record does not show that time was given to file bond and bill of excep-

tions, nor that bond and bill of exceptions were filed in term time, if the bill of exceptions is signed by the judge, it is presumed to have been presented and filed in apt time. Hyde Park v. Dunham, 85 Ill. 569; Myer v. Phillips, 68 Ill. 269; Underwood v. Hoosack, 40 Ill. 98.

Without reproducing in detail all the evidence, we will now refer to and comment upon so much thereof as seems material. It is shown and not disputed, that the prosecutrix was about sixteen years old at the time the alleged sexual intercourse with defendant is charged to have occurred; and his family, with whom she was brought up, consisted of himself, his wife, two grown daughters and a son. That he took her in a buggy to stay with a Mrs. Beverly, his crippled and invalid sister. That he remained there two nights and one day, his sister sleeping in one room, and he and the prosecutrix in an adjoining room, in which she slept on a lounge and he on a bed both nights. That she remained there two months, and then he came for her and took her back to his home, where she stayed until the expiration of two weeks after her child was born, and then an aunt came and took her away. In addition to these undisputed facts the prosecutrix testified that on the second night at Mrs. Beverly's, she, the prosecutrix, retired first and had been asleep, when defendant came to her and had sexual intercourse with her on the lounge, and nothing was then said, except that she told him she would tell on him, and he replied she had better not, or he would make it hot for her. That defendant had never, before or since, said one word to her out of the way, or had sexual intercourse with her but that one time, and no other person but him ever had sexual intercourse with her. She also testified positively, that defendant was the father of her bastard child, and that she had never been married. Defendant testified that the head of his sister's bed was close to the door between the two rooms, which door stood open both nights he was there; that he and his sister sat up and talked both nights, until about eleven o'clock; that when he went to bed he did not go near the lounge, or speak to the prose-

cutrix, nor she to him; that he never said aught out of the way to her, nor had sexual intercourse with her; never thought of such a thing; would as soon have thought of doing it with one of his daughters as with her; that he is not the father of her child. On cross-examination he testified he made no inquiries about the peddler after he learned she charged the peddler with being the father of the child.

Defendant's daughter testified, when her attention was called to the condition of prosecutrix and she first asked the latter about it, she replied she had taken cold, but some time afterward said that when she was at Mrs. Beverly's an Italian foot peddler came there and fooled her, and was the father of the child she was then pregnant with. That he got the better of her the first Monday after she went there, and Mrs. Beverly was not at home; and after this she showed witness a breast pin and pair of ear rings, she said the peddler had given her. This witness testified before the justice, but did not then say it was an Italian peddler prosecutrix mentioned, but said it was a foot peddler; and the justice in rebuttal testified that on that occasion he don't think this witness said Belle told her it was on the Monday after she went to Mrs. Beverly's that the peddler overcame her. The prosecutrix testified before the justice that she told defendant's wife and daughter that a foot peddler was the father of her child, and on cross-examination in the Circuit Court, also testified, when she came back to defendant's in July, 1890, she did not have her menses, and defendant's daughter asked her what was the matter, and she replied that she got in the family way by a foot peddler while at Mrs. Beverly's, and told defendant's wife the same thing. On re-examination, she testified that what she had told them about being in the family way by a peddler was not true, and she told it because she wanted a home. That it was not until she had been at Mrs. Beverly's two or three weeks that a peddler came, and then Mrs. Beverly was there, and she also explained how she purchased the cheap ear rings and breast pin. It thus appears there was a sharp conflict in the evidence upon material points, and it was the province of the jury to determine what the real truth was.

If they believed the prosecutrix, defendant was guilty.
If they believed him, he was not guilty.  It is said her tes-
timony ought to have been discredited because of her
statements to defendant's wife and daughter; but the fact
that she frankly admitted she had made them, both at the
examination before the justice, and at the trial, and the
reason given by her for making them, very properly influ-
enced the minds of the jury favorably toward her.  It is
also said to be improbable, that as there was but one act of
sexual intercourse, and she had never before had such inter-
course, she could have become pregnant by defendant.  But
these facts were before the jury, and if they found them to
be true, and that defendant did have intercourse with her,
as she says he did, they were justified in finding as they
did, that one act of intercourse was sufficient to produce
such result.  It appears, also, defendant occupied the same
bed-chamber with prosecutrix and had the opportunity to
do what she testified to, and the threat he then made, if
the jury believed he made it, would deter her from charging
him with the offense, until she had removed from his place.
His conduct in making no inquiries and exhibiting no solici-
tude for her, when he was informed of her condition,
doubtless had its effect with the jury in determining the
question of his guilt and the weight his testimony was en-
titled to.  A similar case to this is Lewis v. The People, 82
Ill. 104.  It was urged that the verdict was not sustained
by the evidence, and in the opinion it is said:  "If the evi-
dence of the prosecution was alone considered, it would
not leave a doubt that defendant was the father of the
child.  It was for the jury to determine whether he had
overcome the evidence on the part of the people, and they
have found he had not, and we think correctly.  It is true
the prosecutrix made statements out of court inconsistent
with a portion of her testimony, but she frankly, and with-
out evasion, stated she had, and gave the statements as they
were testified to by others, and gave reasons for so doing
that seem to have been satisfactory to the jury, who saw
her testify and had ample means of determining the weight

of all her testimony." See, also, Holcomb v. The People, 79 Ill. 409.

Upon examination of all the evidence in the record, we do not feel warranted in saying it does not justify the verdict. It was objected that at the request of a juror the child was shown to the jury. It was not offered in evidence by the people, and at what time it was exhibited does not very clearly appear. There was an effort made by the defense to prove the father to have been an Italian instead of defendant, and this, perhaps, justified the court in complying with the juror's request. Another point is made which is not assigned as error, viz., that the jury were allowed to seal their verdict and separate, without agreement of counsel, or direction of the court. It appears the jury retired in charge of an officer, and agreed upon the verdict, which was sealed up and delivered to him, then separated, but within ten minutes returned to the court room, counsel for both sides being present. The court asked the jury, all being present, if they had agreed upon a verdict; they replied they had, and handed up said sealed verdict, which the court directed the clerk to open and read, which he did, and the court then asked the jury if the verdict, as read, was their verdict in this case, and after severally replying it was their verdict, the court discharged them, said attorneys still being present and offering no objection. In this state of case, objection to receiving said verdict comes too late; and that it was the real verdict which had been agreed upon before the temporary separation, there can be no doubt. Improper remarks of counsel for the people, are suggested as sufficient grounds for reversal. But the remark made during defendant's cross-examination, while, perhaps, improper, was not of a character likely to prejudice defendant's case. And no ruling was asked for, or made by the court, touching the remarks of said counsel in the closing argument.

We concur with counsel for plaintiff in error that the jury ought to have been accurately instructed, and an examination of the whole series of instructions given by the court,

satisfies us the jury were instructed with sufficient accuracy to properly understand the law, and were not misled or misdirected to the injury of defendant. It is also contended that the judgment entered is so clearly erroneous in form that it must be reversed. By Sec. 8 of the bastardy act, if the issue is found against defendant, he shall be condemned to pay a sum not exceeding $100 for the first year after the birth of such child, and a sum not exceeding $50 yearly for nine years succeeding said first year. By this provision a judgment for as much as $550 might lawfully have been entered against defendant, and if the judgment had been for that sum, inasmuch as no yearly installment after the first could exceed $50, it would have been proper to make that sum payable annually in each year during nine years. But at the time this judgment was entered, more than a year had elapsed since the birth of the child, and the first installment, $100, could have been ordered paid at once; yet two months' time thereafter within which to pay it, was allowed. The amount of $12.50 ordered to be paid monthly until the remaining $250 was paid, amounted to but a yearly installment of $50, for each year, during a period of five years, payable in equal monthly payments, a method we do not understand is forbidden by the statute, but is in compliance with its provisions. We find no error requiring the reversal of the judgment and it is affirmed.