## JAFFE v. DECKARD. (No. 2283.)*

(Court of Civil Appeals of Texas. Amarillo. March 19, 1924. Rehearing Denied April 23, 1924.)

1. **Trial ⊛⇒29(1)—Court's statement in presence of jury panel held not ground for reversal.**

In action by negro girl against a white man for criminal assault, court's statement in presence of jury panel during voir dire examination that "We all know what it (the law) is. It is not a question of whether we like it or not. The question is whether we have the nerve to enforce the law"—without reference to any particular law, *held* not ground for reversal.

2. **Appeal and error ⊛⇒662(3) — Appellate court bound by trial court's qualification of bill of exceptions.**

The Court of Civil Appeals is bound by trial court's qualification of bill of exceptions.

3. **Exceptions, bill of ⊛⇒45—Preparation of bills of exceptions during trial commended.**

Preparation of bill of exceptions in accordance with District and County Court Rules, No. 60, and Vernon's Sayles' Ann. Civ. St. 1914, arts. 2058, 2063–2067, during trial at time matter to which objection being made occurs is to be commended.

4. **Trial ⊛⇒187(1)—Statement by court held not comment on weight of defendant's testimony.**

In action for criminal assault, statement by court on objection to examination of defendant, during which plaintiff's counsel was trying to prove that defendant had sent physician out to see plaintiff the second time, that "He hasn't so far disclosed anything that happened on the second trip," *held* not objectionable as a comment on the weight of defendant's testimony.

5. **Appeal and error ⊛⇒1046(5)—Court's rebuke of defendant's counsel held harmless.**

Court's rebuke of defendant's counsel in absence of jury *held* not ground for reversal on

---

⊛⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error refused June 12, 1924.

defendant's appeal, in view of defendant's failure to prove injury.

**6. Trial ⊂⊃129—Retaliatory remark of appellee's counsel in argument to jury not ground for reversal.**

Retaliatory statement of appellee's counsel in argument to jury *held* not ground for reversal.

**7. Appeal and error ⊂⊃688(2)—Bill of exceptions complaining of argument to jury held too indefinite.**

Bill of exceptions complaining of statement of counsel in argument to jury which under some circumstances might have been legitimate argument, without disclosing the circumstances surrounding the statement, *held* too indefinite.

**8. Evidence ⊂⊃188—Exhibition of child to jury in action for criminal assault held reversible error.**

In action by negro girl against a white man for criminal assault, in which the girl claimed that as a result of the assault she became pregnant and gave birth to a child, and in which the defendant claimed that a particular negro was the father of the child, and the girl and her mother had been examined in an effort to prove such fact, the action of the court in refusing to exclude the child from the courtroom, and in permitting the plaintiff's attorney to take the child and exhibit it to the jury as evidence, *held* not reversible error.

**9. Evidence ⊂⊃194—Torn bloomers worn by plaintiff at time of criminal assault held admissible.**

In action for criminal assault, bloomers worn by plaintiff and torn at the time of the assault, and which had been washed subsequent to assault, *held* properly admitted in evidence.

**10. Evidence ⊂⊃314(1)—Evidence as to plaintiff's complaint of assault held admissible.**

In action for criminal assault, plaintiff was entitled to prove that she made complaint as against contention that such evidence was hearsay.

**11. Trial ⊂⊃412—Objection to testimony held waived by cross-examination.**

In action for criminal assault, the defendant by cross-examination of plaintiff as to her failure to tell any one about the transaction until long after it happened waived his objection to plaintiff's testimony that she told her mother that the defendant was the father of her child.

**12. Trial ⊂⊃75—Error in admission of testimony waived by failure to object to testimony of other witness.**

Error in admission of testimony as to portion of conversation, was waived by failure to object to testimony of other witness as to the entire conversation.

**13. Evidence ⊂⊃157(8)—Entry in family Bible as to age is secondary evidence where mother is present.**

Entry in family Bible showing age of certain child was secondary evidence where mother was present; the mother's testimony being the best evidence.

**14. Evidence ⊂⊃285—Birth and age may be proved by hearsay founded on family tradition.**

It is generally permissible to prove birth and age by hearsay founded on family tradition.

**15. Appeal and error ⊂⊃1052(2)—Secondary evidence held harmless in view of primary evidence as to same fact.**

Admission of secondary evidence *held* harmless in view of proof of same fact by primary competent evidence.

**16. Trial ⊂⊃27—Refusal to require witness to hallo as loud as she could, held not error.**

In action for criminal assault, in which the plaintiff testified that while the defendant was assaulting her she hallooed as loud as she could, court's refusal to require plaintiff while on the stand to hallo as loud as she could *held* not error.

**17. Trial ⊂⊃27—Permitting experiments in presence of jury discretionary with judge.**

The matter of permitting experiments in the presence of the jury is largely within the discretion of the trial judge.

**18. Trial ⊂⊃27—Experiments in presence of jury improper unless conditions and circumstances are same.**

Unless conditions and circumstances are the same it is not proper to permit an experiment by way of demonstration in the presence of a jury.

**19. Rape ⊂⊃66—Evidence of plaintiff's good moral character admissible where challenged by defendant.**

In action for criminal assault, in which the defendant challenged plaintiff's moral character, evidence as to plaintiff's character for chastity, *held* admissible.

**20. Evidence ⊂⊃357—Letter held admissible in view of cross-examination as to contents.**

In action for criminal assault, in which defendant had cross-examined plaintiff and her mother as to the contents of a letter, and the effect thereof was to impress jury with the idea that the letter was damaging to plaintiff's character, the letter itself was properly admitted in evidence.

**21. Affidavits ⊂⊃18—Affidavit by plaintiff's brother as to his age held not admissible against plaintiff in action involving her age.**

In action for criminal assault involving issue as to plaintiff's age, affidavit made by plaintiff's brother as to his age was not admissible against plaintiff.

**22. Rape ⊂⊃67—Defendant held liable for support of child until majority in action for criminal assault.**

In action for criminal assault, the defendant was properly held liable for the amount necessary for the support of the child to which plaintiff gave birth as a result of such assault until the child reached its majority.

**23. Appeal and error ⊂⊃742(1)—Propositions not based on assignments of error or bills of exceptions not considered.**

Propositions not based on either the assignments of error shown in the brief or any

bills of exceptions found in record will not be considered.

**24. Rape ⬳66—Plaintiff's testimony as to manner in which other people talked about her held admissible in action for criminal assault.**

In action by negro girl against a white man for criminal assault, in which there was testimony that as a result of the assault the girl gave birth to a child, the girl's testimony that people talked about her as "that girl that had that baby by that white man" *held* admissible.

**25. Appeal and error ⬳742(4)—Proposition held multifarious and too general for consideration.**

Proposition that "it is reversible error for the trial court to compel the defendant to answer immaterial, irrelevant, and prejudicial questions that can only serve to inflame the minds of the jury, and throw no light on the facts under investigation,". *held* multifarious, and too general for consideration.

**26. Witnesses ⬳275(1)—Latitude allowed in cross-examination of party.**

When a party is testifying as a witness in his own behalf considerable latitude is allowed other party in cross-examination.

**27. Witnesses ⬳275(3) — Cross-examination to show words or conduct inconsistent with testimony proper.**

A party may be cross-examined to show any words or conduct inconsistent with his testimony, and which may be properly construed into an admission.

**28. Evidence ⬳267—Testimony as to declarations by plaintiff to defendant's agent held admissible.**

In action for criminal assault, testimony as to statements made by plaintiff to a physician who had been sent to see plaintiff by the defendant *held* admissible as against defendant.

**29. Appeal and error ⬳1043(2)—Refusal to require plaintiff to file cost bond held harmless in view of judgment.**

Overruling of motion to require plaintiff to file cost bond *held* harmless on appeal from judgment entitling plaintiff to her costs.

**30. Evidence ⬳546—Admission of evidence as to cost of maintenance of child held not abuse of discretion.**

In action for criminal assault, in which plaintiff sought to recover damages for support of child to which she claimed to have given birth as result of assault, *admission of* testimony of witness, a housewife and mother, as to the reasonable and necessary sum to support and maintain a child from time it became 6 years old until it reached majority, *held* not abuse of discretion.

**31. Trial ⬳192—An assumption of facts in charge proven by uncontradicted evidence not error.**

It was not error for the court to assume facts in his charge which were proven by uncontradicted evidence.

**32. Rape ⬳66—Charge authorizing allowance of damages for mental and physical suffering without any standard of measurement held not erroneous.**

In action for criminal assault, charge allowing jury to assess reasonable compensation for mental and physical suffering without any standard by which to measure such compensation *held* not error.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Suit by Katie Mae Deckard against Harry Jaffe. Judgment for plaintiff, and defendant appeals. Affirmed.

P. B. Cox and Bullington, Boone, Humphrey & Hoffman, all of Wichita Falls, for appellant.

Martin & Oneal and J. V. Allred, all of . Wichita Falls, for appellee.

HALL, C. J. This suit was filed March 13, 1922, by Katie Mae Deckard, a minor, by next friend, against appellant, Harry Jaffe, for damages resulting from an alleged criminal assault upon her. She alleged that she was under the age of 15 at the time of the filing of the suit and at the time she was raped by appellant; that the assault was committed upon her by force and violence on or about the 1st of June A. D. 1921; that to accomplish his purpose the appellant seized her by the throat and choked her, and used other personal violence upon her; that as a result of said assault upon her and carnal knowledge of her she became pregnant, and on the 27th day of February, A. D. 1922, gave birth to a baby; that this baby was the result of the appellant having carnal intercourse with her, and that appellant was the father of the baby; that by reason of this assault upon her she suffered physical pain and mental anguish, and by reason of her being pregnant and giving birth to the child she suffered physical and bodily pain; that it was necessary to operate upon her in delivering the child; that she was a negro girl, and that the child was of fair complexion, and by reason of that fact people who saw her with the child would know that the father of the child was of the white race, and that the child was illegitimate, and that she therefore suffered humiliation and mental anguish. She further alleged that within six years from the 15th of March, 1922, she would be 21 years of age, and would be compelled to maintain, support, and educate the child until it became 21 years old at a reasonable cost of not less than $1,500; that by reason of the foregoing injuries which she had suffered in the way of physical pain and mental anguish and humiliation the defendant was liable to her in actual damages in the sum of $10,000, and that by reason of her having to maintain and support the child the defendant was liable to her in actual damages in the sum of

$1,500, and that by reason of appellant's willful and malicious acts in assaulting and raping her she was entitled to exemplary damages in the sum of $10,000.

To these pleadings the defendant filed a general denial and general demurrer, and also a special denial alleging that at the time of the alleged assault the appellee was above the age of 15 years, and that whoever had sexual intercourse with her had it with her consent, and further alleged that the appellee had upon numerous occasions had sexual intercourse with other people; that appellant was incapable of begetting a child.

The findings of the jury are in substance as follows: (1) The plaintiff was 14 years of age in June, 1921, the time of the alleged assault. (2) The defendant had carnal intercourse with plaintiff in June, 1921. (3) Such carnal intercourse was without her consent. (4) Such carnal intercourse was by force and violence. (5) Prior to that time plaintiff had never had carnal intercourse with any other male person. (6) Such carnal intercourse resulted in the pregnancy of plaintiff. (7) Plaintiff has sustained actual damages in the sum of $4,000. (8) Plaintiff has sustained exemplary damages in the sum of $2,-500.

In answer to first special issue requested by plaintiff the jury found that $1,500 paid now in cash would reasonably compensate plaintiff for the necessary expense of rearing, maintaining, and educating the child from the time it is six years of age until its maturity. In reply to defendant's special issue No. 17 the jury found that the defendant, Harry Jaffe, is the father of plaintiff's child. In reply to defendant's special issue No. 4 the jury found that the plaintiff was not unchaste prior to the time of the alleged assault, and further found in reply to defendant's special requested issue No. 6 that she did not consent to the act of carnal knowledge at the time she became pregnant.

Based upon these findings judgment was rendered in plaintiff's favor for the sum of $8,000, with interest at 6 per cent. from the date thereof and for all costs of suit.

[1] By his first and second propositions the appellant asserts that it is reversible error for the trial court to state in the presence of a jury panel during their voir dire examination, in a case of this character, that:

"We all know what it [the law] is. It is not a question of whether we like it or not. The question is whether we have the nerve to enforce the law, and whether we can do it or not, as it is written,"

—and, further, that it is reversible error for the trial judge to arise from his seat and tell the jury that we all know what the law is, and no man should sit on a jury who has not the nerve to enforce that law, when such statement and comment is likely to be taken by the jury panel to mean that plaintiff, being a negro woman, is in fact entitled to recover in the opinion of the court if the jury trying the case has the nerve and courage to give her a verdict. These propositions are based on the appellant's first bill of exceptions, which shows that during the voir dire examination of the veniremen several objections were made by appellee's counsel to questions propounded by appellant's counsel to Venireman Benson which the court sustained. After some general remarks by the court, which are not specifically objected to, and during which he arose from the bench, the court made this statement in the presence of the panel:

"We all know what it is. No doubt about that. It is not a question of whether we like it or not; it is the law. The question is whether we have the nerve to enforce the law, and whether we can do it or not as it is written."

The objection made to this statement is "the same was an expression of an opinion by the court as to how he felt toward this case." No other or further objection can be urged in this court. Sharp v. Schmidt, 62 Tex. 263. In his brief appellant says that the trial judge was angry. The only evidence in the record tending to show that he was not perfectly tranquil, cool, and deliberate is his statement that we all know what the law is, and that without question. Since the learned trial judge did not mention any particular law referable to either side of the case on trial, it might have been as appropriately excepted to by the appellee as by the appellant. If error it is therefore harmless. Lammers v. Wolfertz (Tex. Civ. App.) 164 S. W. 1102; Cooper & Jones v. Hall (Tex. Civ. App.) 168 S. W. 465.

[2, 3] The court qualified the bill by saying in part:

"The statement of the court complained of by the defendant in this bill was made at the time the court sustained the defendant's objection to the question asked by plaintiff's counsel, and the court did not in any way, by act or word, express any opinion as to how he felt toward this case, and at that time did not have the slightest idea or opinion as to the merits of the case."

This court is bound by the trial court's qualification of the bill. Jolley v. Brown (Tex. Civ. App.) 191 S. W. 177. If the appellant had prepared his bill of exceptions in accordance with District and County Court Rules, No. 60, and V. S. C. S. arts. 2058, 2063-2067, we think many of his 48 assignments of error would not have been urged here. Brunner Fire Co. v. Payne, 54 Tex. Civ. App. 501, 118 S. W. 602. We heartily commend the practice of parties preparing their bills of exceptions during the trial and at the very time the matter to which objection is made occurs, expecially where cases are tried like this was, under high tension. Then, if the court refuses the bill as presented, it can be proven by bystanders. Such practice may

delay the trial somewhat, but it will result in fairness to all parties, and avoid much of such unpleasant criticism of the trial court, as we regret to find in this case.

[4] The third proposition is that it is error for the court in ruling upon the admissibility of testimony to state that the witness has or has not disclosed certain facts in his testimony. The bill of exception does not sustain the proposition. The bill shows that the appellant was on the stand, and appellee's counsel'had been examining him with reference to a trip which Dr. Walker had made or was supposed to have made at the instance of appellant to see the appellee and her mother after the birth of the child. It further appears that appellee's counsel was trying to prove that appellant had sent Dr. Walker out to see appellee the second time. Appellant had repeatedly denied that Dr. Walker had gone out there the second time. In ruling the court said:

"He hasn't so far disclosed anything that happened on the second trip."

Appellant's counsel then said:

"I think the record would show to the contrary, and I take exception to the remark of the court that he hasn't shown anything that happened out there, and expressing the court's opinion as to what happened out there and as to what has not happened, and ask for a bill on that."

Counsel's remarks were not exactly fair to the court. Reference to the bill shows that the court's statement was correct, and corroborated the appellant's testimony to the effect that he had not sent Dr. Walker the second time to see appellee. The contention here is that the court's statement is a comment upon the weight of the appellant's testimony. We do not think so.

[5] By the fourth and fifth propositions appellant contends that it is error for the trial judge, in the presence of the jury or apart from them, to arise from his seat, and in an angry manner rebuke counsel for defendant, while ruling upon evidence, and to make a speech in justification of his action and say "that if he has erred it was on account of the attorneys refusing to present the law to the court," because such conduct and language was calculated to prejudice the jury against the defendant; and that it was further error for the court, in an angry manner, while counsel is objecting, to dispute counsel's word, and show prejudice against counsel, thereby discrediting them before the jury. The bill of exceptions shows that the appellee's witness Mrs. Frazer was upon the stand, and was being interrogated upon the issue of the necessary expense in maintaining a child from the age of 6 to its majority. Appellant's counsel objected upon the ground that the law of Texas is to the effect that damages of that kind cannot be recovered, in that they are too remote, saying:

"There is a positive statute forbidding any kind or character of damages like this."

The bill further shows that at this point the jury was excused for five minutes, and the court requested counsel to give him that statute, whereupon counsel stated that he did not remember it. The court then said:

"Counsel for the defendant interposes, the objection stating to the court that they rely upon the statute law of the state of Texas with reference to the measure of damages in this case; the court has called upon counsel to present the law with reference to this matter, and counsel failed and refused to do so."

Whereupon appellee's counsel said:

"I do not refuse to do so."

Assistant counsel for appellee also stated "that defendant did not refuse to do so." The court then said:

"Just wait; the court is not through; just have a seat."

After counsel was seated the court proceeded as follows:

"The court admits this testimony upon the theory that if for any reason that it was not admissible, and known to counsel not to be admissible, that the error, if any, committed by the court, is invited by counsel interposing the objection and refusing to show the law supporting the same."

Appellee's counsel then asked, "Is the court through?" to which the court replied in the affirmative. Appellee's counsel then stated that they did not have sufficient time to go to their office, and did not have their briefs upon the case with them, and could not cite the authorities at that time. They insisted that they were relying upon their objections; that they were not inviting any error or trying to lead the court into any error, but honestly believed that they were right; and further objected to the court's criticism of counsel in the manner he did in the presence and hearing of the jury. The court then said, "It was not;" to which appellee's counsel replied, "To wit, Homer Karronbrock and one or two others standing here when the court made the remark, and who are now in the courtroom at the time I am making this statement and will verify that fact." Neither Juror Karronbrock nor any other witness was sworn to show that any juror was present and heard the colloquy between the court or appellee's counsel. The bill of exceptions shows that the jury had been excused for 5 minutes, and that the court said no juror was present at the time. Appellant has not discharged the burden upon him to show the contrary, and has not therefore shown error.

[6] Error is further predicated upon the following language used by appellee's counsel in closing the argument:

"The record in this case shows that he [defendant] knew that the suit was about to be filed, and he went to his lawyer, and they went to the Wichita State Bank, and on Saturday evening late executed a deed of trust to cover his property for $10,000 before this suit was filed on Monday. Was I acting hastily? You [turning to defendant] was then getting very hasty about it."

The statement of facts shows that appellant had heard that the suit was about to be filed; he admitted executing the deed of trust to secure his note to the bank, but evaded saying whether the note was executed at the time the deed of trust was made or prior thereto. No official of the bank testified with reference to it. The court qualified the bill by saying that the remarks of appellee's counsel were in reply to severe criticism made by the attorneys for the defendant against him, claiming that he had acted too hastily in bringing the suit. According to the court's qualification, the statement complained of was retaliatory, and is not reversible error. Adams v. Hamilton, 53 Tex. Civ. App. 405, 116 S. W. 1169; I. & G. N. Ry. Co. v. Davison (Tex. Civ. App.) 138 S. W. 1162; Funk v. House (Tex. Civ. App.) 168 S. W. 481; Gwyanne v. Mann (Tex. Civ. App.) 240 S. W. 1035; San Antonio, U. & G. R. Co. v. Hagen (Tex. Civ. App.) 188 S. W. 954.

[7] In his argument appellee's counsel also said that appellee "sought to go for advice and help, but the jury is prevented from knowing where she went." The bill is very meager, and is too indefinite and obscure. It throws no light upon the circumstances surrounding this statement. The statement unexplained means very little, and might be perfectly legitimate argument under some circumstances. K. C., M. & O. Ry. Co. v. West (Tex. Civ. App.) 149 S. W. 206; Pecos & N. T. Ry. Co. v. Suitor (Tex. Civ. App.) 153 S. W. 185.

[8] Error is assigned upon the action of the court in overruling appellant's motion to exclude the bastard child from the courtroom, and in permitting appellee's attorney to take the child and exhibit it to the jury as evidence in the case. It appears that the child was less than four months old at the time of the trial. The Court of Criminal Appeals of this state has held in prosecution for rape and seduction that it was not error for the prosecutrix to testify while she held the child in her arms in the presence of the jury that the accused was its father (Snodgrass v. State, 36 Tex. Cr. R. 207, 36 S. W. 477; Whitehead v. State, 61 Tex. Cr. R. 558, 137 S. W. 356), but intimated in Stracner v. State, 86 Tex. Cr. R. 89, 215 S. W. 305, that if the child had been kept in the courtroom over the appellant's objections or had been exhibited to the jury it would be reversible error. In Gleason v. State, 77 Tex. Cr. R. 300, 178 S. W. 506, a seduction case, and in Gray v. State, 43 Tex. Cr. R. 300, 65 S. W. 375, a rape

case, the exhibition of the child to the jury was held reversible error. In the late case of Rhea v. State (Tex. Cr. App.) 255 S. W. 757, being a prosecution for seduction, the prosecutrix brought the baby into the courtroom when she was sworn with the other witnesses and carried it with her to the witness chair, and when it began to fret one of the state's attorneys took it and gave it to another party in the courtroom. The court held this was not reversible, since "there was no profert of the baby in evidence, no comment upon its appearance, and no comparison between it and the appellant." Based upon these authorities we hold that the court did not err in overruling the appellant's motion to exclude the child from the courtroom. The right to make profert of the child in civil actions for rape as well as in prosecutions for seduction and rape and in bastardy proceedings is a question upon which there is much conflict generally between the authorities. 3 R. C. L. 765; 22 R. C. L. 1202; 7 C. J. 993; Eckhart v. Peterson, 94 Wash. 379, 162 Pac. 551; Valencia v. Milliken, 31 Cal. App. 533, 160 Pac. 1086. Where the issue is as to race or color the child may be exhibited to the jury. Warlick v. White, 76 N. C. 175; Clark v. Bradstreet, 80 Me. 454, 15 Atl. 56, 6 Am. St. Rep. 221; State v. Saidell, 70 N. H. 174, 46 Atl. 1083, 85 Am. St. Rep. 627; State v. Harvey, 112 Iowa, 416, 84 N. W. 535, 52 L. R. A. 500, 84 Am. St. Rep. 350; Morrison v. People, 52 Ill. App. 482. The appellant charged in his answer that appellee had previously had sexual intercourse with other men, and he proved that Jacob Adkins, who is described in the statement of facts as "a mulatto negro," had written love letters to appellee and had tried to marry her, and to that end had written to appellee's mother. Appellee and her mother were examined at length with the evident purpose of showing that the negro Adkins might have been the father of the child. Under these circumstances there was no error in exhibiting it to the jury.

[9] Appellee was permitted to introduce her torn bloomers in evidence. In the case of McMurrin v. Rigby, 80 Iowa, 322, 45 N. W. 877, the Supreme Court of Iowa, in passing upon the identical question in a case in all things similar to this, said:

"Plaintiff introduced in evidence a portion of the underclothing which she claims was on her person, and torn by the defendant in accomplishing * * * his assault upon her. Plaintiff testified that the garment thus introduced * * * was in the same condition that it was left by defendant, excepting that it had been washed. We think the garment was properly received in evidence. The change in its appearance was to the advantage of defendant, as presumably the stains of blood had been removed by the washing, but its condition tended to support the claim of plaintiff in regard to violence. The fact that the garment had been washed was a proper one for the jury to consider in determining the weight which should be given to its

appearance, and the testimony of plaintiff in regard to it."

In the instant case the appellee alleged that appellant raped her by force and violence, and tore her bloomers off in order to accomplish his purpose. The bloomers had been washed and had been hanging up for about a year before being brought into court. Appellant sharply contested the issue of the age of appellee, insisting that she was over the age of consent. If the jury had believed his contention, then the torn clothing was admissible upon the issue of violence and force. We think it was also admissible upon the issue of exemplary damages. The bloomers were not bloody, and there was nothing to inflame the minds of the jury. The jury must have known that the probative force of such evidence was weak, and we think there was no error in admitting them.

[10, 11] While appellee was upon the stand her counsel asked this question:

"Did you ever tell any one who it was that got you in this condition?"

Appellant objected because it would be hearsay, irrelevant, and immaterial. The question was not answered by appellee, but her counsel then asked the following question:

"Did you ever tell any one after this last time at the doctor's office? If so, how long after that do you suppose it was before you told them the person that had done this?"

Appellee answered:

"Didn't tell no one but mama."

The court has qualified this bill of exception as follows:

"Witness did not say what she told her mother or give any part of her conversation with her mother."

While Alice Deckard, the mother of appellee, was on the stand, appellee's counsel asked her this question:

"Do you remember now, when or did you find out from Katie Mae who was the person that got her in the condition she was in?"

The appellant objected because it was irrelevant, hearsay, and self-serving declaration, and conversation between two parties in the absence of the defendant, which objection was overruled by the court, and the witness answered:

"Yes, sir."

Court has qualified this bill as follows:

"The court did not permit any part of the conversation between the witness Alice Deckard and Katie Mae Deckard to be introduced in evidence."

These bills do not show a violation of the rule announced in Pefferling v. State, 40 Tex. 487, and Poyner v. State, 40 Tex. Cr. R. 640,

51 S. W. 376. Appellee was entitled to prove that she made complaint. The bills do not show that she named the defendant as the rapist during her conversation with her mother. Moreover, the appellant has waived his objection by cross-examining appellee. Appellant's counsel on cross-examination was attacking appellee for not having told any one about the transaction until long after it happened. In the cross-examination appellee testified that she told her mother that the appellant was the father of her child. There was no objection to this statement.

[12] It appears that on the morning after the child was born appellee's mother went to the residence of Mrs. Frazer, and in the presence of Mrs. Frazer and Mrs. Bacon attempted to call the appellant over the telephone, and there had a conversation which Alice Deckard describes as follows:

"Mr. Jaffe answered the phone when I called up. I know it was him, because I heard his voice. When he answered the phone he said, 'Who is that?' I said it was Alice. He said, 'Alice?' I said, 'Yes.' So after while he said, 'Is that Mammy?' I said, 'Yes; this is mammy.' 'Mammy,' he said, 'what do you want?' I said, 'This baby is born now. I want to know what you going to do about it. It is just like you. I want to know what you are going to do about it now.' He says, 'I cannot talk to you there.' He says, 'You come up here, and I will talk to you up here.'"

This testimony was admitted without objection. The bill shows that the two witnesses stated only what they heard Alice Deckard say. It is true that appellant denied that he ever had such conversation with Alice Deckard, but his witness and physician, Dr. Walker, testified:

"Harry Jaffe came to me and told me that Alice Deckard had called him up and told him the baby was out there, and that it was white, and wanted to know what he was going to do about it."

The error, if any, in permitting Mrs. Frazer and Mrs. Bacon to give in evidence that part of the conversation heard by them, is waived by the failure of appellant to object to the evidence of the entire conversation as detailed by Alice Deckard.

[13-15] The sister of appellee was permitted to testify with reference to entries in the family Bible showing the ages of Alice Deckard's children, including the appellee. Such entries were secondary evidence. Smith v. Geer, 10 Tex. Civ. App. 252, 30 S. W. 1108; Campbell v. Wilson, 23 Tex. 254, 76 Am. Dec. 67. Alice Deckard was present, and her testimony was the best evidence. When that part of the record of births as they appeared in the family Bible was offered, appellant first objected to any part of the record, but later offered a part of the entry which showed that the date of the birth of appellee had been probably altered by writing the fig-

ure "7" in ink, over some other figure, which had been written in pencil. After appellant introduced that part of the entry the court admitted the entire page in evidence. The following objection was made:

"We object to the introduction of the entire record: First, because it is hearsay, as the testimony already shows that this witness has made this record from the statement of some other person; second, because the record shows on its face that it has been changed from pencil to ink, and mutilated; and, third, because there is no testimony that properly identifies these records, and under the testimony of the witness at this time she states that she did not know whether it is correct or not, and it is a mere attempt on the part of the plaintiff to bolster this witness and bolster up his case."

The specific objection that it was secondary evidence was not made. It is generally permissible to prove birth and age by hearsay founded on family tradition. Since the age of appellee was proven by primary and competent evidence, and because appellant introduced part of the entry, the error, if any, is harmless.

[16-18] Appellee had testified that while appellant was raping her she hallooed as loud as she could. While appellee was upon the stand the appellant requested that she be required to halloo as loud as she could. The court refused this request, and this action of the court is assigned as error. The matter of permitting experiments in the presence of the jury, is largely within the discretion of the trial judge. Unless conditions and circumstances are the same it is not proper to permit an experiment by way of demonstration in the presence of the jury. Appellant insists that if the court had required appellee to halloo it would have enabled him to bring the neighbors as witnesses, and ask if they had heard her halloo at the time she was being raped; but since she was not able to fix the exact date of the occurrence the experiment, even if made, would not have benefited appellant.

[19] Appellant charged in his pleadings that appellee had upon numerous occasions voluntarily had sexual intercourse with men. Before making this allegation he took her ex parte deposition, inquiring at length about her supposed relations with one Jacob Adkins, and as to the contents of certain letters which Adkins had written appellee and her mother. In appellant's cross-examination of appellee and her mother he directly challenged appellee's moral character; under these circumstances her character for chastity became a relevant fact, and the nature of the action and the damages claimed involved her chastity. Evidence of plaintiff's good moral character was therefore admissible. Houston Chronicle Pub. Co. v. Tiernan (Tex. Civ. App.) 171 S. W. 542, and authorities there cited.

[20] The letter of Adkins to Alice Deckard was properly admitted in evidence. Appellant had on cross-examination of both appellee and her mother proved part of its contents. The effect of the cross-examination was to impress the jury with the idea that the letter was extremely damaging to appellee's character, so on re-examination it was admitted. While it contained little if any probative value, it did not reflect upon her moral character, and it was due appellee that the jury should see it.

[21] Nathaniel Deckard, an older brother of appellee's, was sworn by appellant as a witness, and asked if he did not make an affidavit on February 1, 1922, that he was over 21 years of age. He answered, "I did not." Appellant then stood him aside, and offered in evidence what purports to be an affidavit signed by said witness and sworn to before the deputy county clerk of McLennan county. The affidavit shows that it was made in order to procure a marriage license for the affiant. Even if the witness had admitted making the affidavit, it would not have been admissible against appellee. Royal Neighbors of America v. Fletcher (Tex. Civ. App.) 230 S. W. 478.

[22] The appellant insists that because under the common law the father of a bastard child could not be legally bound to support and maintain it the court erred in admitting evidence showing what amount would be necessary for its support until the child reached its majority, and further erred in rendering judgment for the sum of $1,500 found by the jury to be a reasonable amount of damages upon that issue. The common-law rule is as stated, and because under the common law the mother is entitled to the exclusive custody of her bastard child, she was charged with the burden of its support. Barela v. Roberts, 34 Tex. 555. The reason for the rule that the putative father could not be made to support his bastard child was the uncertainty of its paternity. No such reason could exist as to its maternity. In early times in England statutes were enacted under which a bastard's paternity could be legally determined. Similar statutes have been enacted in a great majority of the states of the Union. There is and has ever been a natural and moral obligation resting upon the father to support even his illegitimate child, and this obligation is a sufficient consideration to sustain a contract on his part to support it. Such obligation is recognized as legal and binding, and is enforceable through the courts of North Carolina, and in Kansas, where no bastardy statutes are in force. Sanders v. Sanders, 167 N. C. 319, 83 S. E. 490; Burton v. Belvin, 142 N. C. 151, 55 S. E. 71; Doughty v. Engler, 112 Kan. 583, 211 Pac. 619. The decision in the last case rested upon the just and reasonable grounds that a bastard child is entitled to support from its

father as well as its mother, and when the fact of paternity is settled by a court of competent jurisdiction the particular procedure through which this was accomplished was held to be immaterial. Most of the authorities we have found upholding the common-law rule above stated were seduction cases, and applied the maxim "Volenti non fit injuria" to the mother of the bastard. 1 Jaggard on Torts, 454, 457. It would be manifestly unjust to apply either the maxim or the common law in this case. The facts sustain the finding of the jury that appellant forcibly raped appellee, thus becoming the father of her child. The verdict makes him primarily responsible for its existence. It is the natural and direct result of his tortious act, and we think its maintenance and support was a proper item of damages to be awarded her. In our opinion the rules of damages applicable to cases of torts generally should govern here, rather than the common-law rule which would exonerate the appellant.

[23] Propositions numbered 27, 28, and 29 are not based upon either the assignments of error shown in the brief or any bills of exceptions found in the record, and will not be considered.

[24] Proposition No. 30 is:

"Testimony to the effect that people always talk about 'There goes that girl that had that baby by that white man' is hearsay, based upon supposition, and an opinion of the witness."

Following this is the further proposition that it was error to allow the plaintiff to testify to the jury as to what other people will think or say about her for having a baby by a white man. The substance of the bills of exception upon which these propositions are predicated are not set out in the brief, but by reference to the transcript we find that the objectionable statement was neither hearsay nor was it the opinion of appellee. The following is her testimony:

"And every time I goes out people always talk about there goes that girl that had that baby by that white man."

This was the statement of a fact. She further testified:

"Well, I just feel ashamed about it because it is a white baby, and I am not married."

The objection to this testimony as shown by the bill is that it is irrelevant and immaterial. The objection was not well taken.

[25-27] By his thirty-second proposition appellant insists that—

"It is reversible error for the trial court to compel the defendant to answer immaterial, irrelevant, and prejudicial questions that can only serve to inflame the minds of the jury and throw no light on the facts under investigation."

This proposition is manifestly too general, and moreover is multifarious, as its consid-eration requires us to determine the propriety of numerous questions asked the appellant upon cross-examination, and to which a variety of objections were made. This multitude of questions are to be found in four different bills of exceptions. However, on account of the importance of the case, we waive this violation of the rules of briefing, and by referring to the bills of exceptions find that appellee's purpose in propounding the several interrogatories to appellant was to show that he had sent Dr. Walker to see if appellant and the baby could not be moved out of the state or away from Wichita Falls. Dr. Walker had testified that appellant had sent him to quiz the girl and see what she would say as to who did it. Appellant himself testified:

"Dr. Walker went down there as my representative or agent to see and find out all he could for me."

When a party is testifying as a witness in his own behalf considerable latitude is allowed the opposite party in cross-examining him. Fort Worth & D. C. Ry. Co. v. Travis, 45 Tex. Civ. App. 117, 99 S. W. 1141. A party may be cross-examined to show any words or conduct inconsistent with his testimony, and which may be properly construed into an admission. Pecos & N. T. Ry. Co. v. Coffman, 56 Tex. Civ. App. 472, 121 S. W. 218.

[28] Appellant has grouped eight different propositions presenting the following contentions: (1) That when he sent Dr. Walker to see the appellant, requesting him to find out what color the child was and what the charges amounted to, he did not constitute said doctor his agent, and was not bound by what was said in the conversation with the appellee. (2) That since Dr. Walker had another motive in going out there he was not the appellant's agent. (3) That the evidence of any effort on the part of Dr. Walker to compromise with appellee was inadmissible. (4) That it was error to permit Dr. Walker to testify what took place between him and Mrs. Frazer at the home of the plaintiff shortly after the birth of the child. (5) It was error to permit appellee's counsel to ask irrelevant and immaterial questions solely for the purpose of inflaming the minds of the jury. It appears that the appellant's sister, Mrs. Becker, had carried appellee to see Dr. Walker three times before the birth of the child. Dr. Walker testified without objection as follows:

"Harry Jaffe asked me if I would go and see if I thought it was a white child, or if its father was white. I don't know whether I reported back to him or Becker. I said I thought the father of the child was a white man, and I told Harry Jaffe I thought he needed a lawyer worse than he needed a doctor. That baby has got white blood in it. It is my opinion I made the proper report on the baby. After I had made this first trip out there at Mr. Jaffe's request I reported back to Jaffe or his

brother-in-law to tell him that I had seen the baby, and about its appearance. I think it was Jaffe who asked me to go back out there and quiz this girl, Katie Mae, to see what she would say as to who did it."

Appellee's mother had called appellant over the phone immediately after the birth of the child and charged him with being its father. The appellant himself testified as follows:

"I went to Dr. Walker's office the same morning after the phone rang at my house on the morning after the baby was born. I asked him to go ahead and see and make an investigation of the whole matter for me, and make a report to me of what he found out there, and he went down there as my representative or agent, to see, and found out all he could for me."

In disposing of these propositions, we will state first that neither of the bills of exceptions shows that Dr. Walker made any effort to compromise with appellee. The matter of compromise was not mentioned. It is clear from the testimony of appellant and Dr. Walker that the latter went as the representative and agent of the former. The fourth contention above is based upon bill of exception No. 38. This bill shows that while Mrs. Frazer was upon the stand she was asked by appellee's counsel whether she heard Dr. Walker call appellee's attention to the fact that appellee had said to him at the time she was in his office that two other men had been with her. The witness answered that Dr. Walker did call her attention to it. She was then asked to tell what appellee said when Walker made that statement. This was objected to because it was hearsay and prejudicial to the rights of the defendant, and because no proper predicate had been laid, and the question was not covered by any question theretofore asked of any witness. Mrs. Frazer's answer is as follows:

"When he called her attention to this she said, 'No, sir; I didn't,' and he dropped the subject."

It appears that this conversation occurred immediately after the birth of the child. Dr. Walker was charging her with having admitted to him that she had been having intercourse with two different men. She then and there flatly denied having made such admission to him. We think the testimony was properly admitted, because whether appellee had ever made such a statement to Dr. Walker had become a material issue in the case. Parrish v. Adwell (Tex. Civ. App.) 124 S. W. 441; 3 Wigmore, Ev. § 1768. It was further admissible to contradict the appellant's witness Dr. Walker, who was there representing the appellant. Dr. Walker had testified that when appellee was in his office the second time, she had told him she had had intercourse with two men. When Dr. Walker charged her in the presence of Mrs. Frazer with having so stated to him appellee immediately denied it. Declarations made in the presence of an agent of an adverse party are admissible (Watts v. Dubois [Tex. Civ. App.] 66 S. W. 698), and it was also admissible in rebuttal (Grant v. Alfalfa Lbr. Co. [Tex. Civ. App.] 177 S. W. 536). It was also admissible in corroboration of appellee, who had testified as to the conversation she had with Dr. Walker in his office when he had asked her about her relations with other men, and in which she denied ever having such relations.

[29] On the third day of the trial appellant moved the court to require the appellee to file a cost bond. The error of the court, if any, in overruling the motion is harmless, since appellee recovered a judgment entitling her to her costs. Yoakum v. Mettasch (Tex. Civ. App.) 26 S. W. 129; Kelley v. King, 18 Tex. Civ. App. 360, 44 S. W. 915.

[30] Mrs. Frazer, who is shown to be a housewife and a mother, was asked to state what in her best judgment would be a reasonable and necessary sum to support and maintain the child from the time it became 6 years old until it reached its majority. Her answer was:

"Well, judging from my knowledge of about what they spend to eat and clothe I would say $120 per year would be as little as it would be possible to raise the child."

We may reasonably infer from her answer that she had actual knowledge of what would be required. Appellant did not cross-examine her, touching her qualifications. The only objection made to the testimony which has not heretofore been considered is that the witness was not shown to be qualified. The court did not abuse his discretion in admitting the evidence.

[31, 32] It is not error for the court to assume facts in his charge which are proven by uncontradicted evidence. The fact that appellee was pregnant and gave birth to a child is not questioned in the record. Appellant complains that the court's charge allowed the jury to assess reasonable compensation for mental and physical suffering "without giving them any yardstick by which to measure such compensation." There is no precise rule by which the extent of such suffering can be measured, and no direct proof can be made of the amount. That must necessarily be left to an impartial jury. Yellow Pine Paper Mill Co. v. Lyons (Tex. Civ. App.) 159 S. W. 909; Brown v. Sullivan, 71 Tex. 470, 10 S. W. 288.

Several other propositions are presented in the brief, but they will not be specifically discussed, since the questions raised have been disposed of by what has heretofore been said.

We find no reversible error in the record, and the judgment is affirmed.